(No. 94235.—

MICHAEL BOROWIEC *et al.*, Appellees, v. GATEWAY 2000, INC., Appellant.

*Opinion filed April 1, 2004.*

KILBRIDE, J., joined by RARICK, J., dissenting.
RARICK, J., joined by KILBRIDE, J., also dissenting.

James D. Adducci and Marshall L. Blankenship, of Adducci, Dorf, Lehner, Mitchell & Blankenship, P.C., of Chicago, and Mark R. Kravitz and Sandra Slack Glover, of Wiggin & Dana, L.L.P., of New Haven, Connecticut, for appellants.

Adam J. Krohn, of Krohn & Moss, Ltd., and Andrew P. Lamis, both of Chicago, for appellees.

Howard L. Teplinsky, of Seidler & McErlean, of Chicago, and Robin S. Conrad, of Washington, D.C., for *amicus curiae* Chamber of Commerce of the United States of America.

Howard L. Teplinsky, of Seidler & McErlean, of Chicago, and Michael Petricone, of Arlington, Virginia, for *amicus curiae* Consumer Electronics Association.

Dom J. Rizzi and Christopher B. Sanchez, of Miller, Faucher & Cafferty, L.L.P., of Chicago, and Kevin P. Roddy, of Hagens Berman, L.L.P., of Los Angeles, California, for *amicus curiae* National Association of Securities and Commercial Law Attorneys.

JUSTICE FREEMAN delivered the opinion of the court:

In this appeal, we consider whether the circuit court of Cook County erred in denying the motion to dismiss or to compel arbitration filed by Gateway 2000, Inc. (Gateway), in each of three cases seeking, *inter alia*, damages for breach of express and implied warranties under the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (15 U.S.C. § 2301 *et seq.* (1994)), and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1998)). The appellate court consolidated the cases and affirmed the circuit court's denial of each motion to dismiss or to compel arbitration. 331 Ill. App. 3d 842. We granted Gateway's petition for leave to appeal pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315), and now reverse and remand for further proceedings.

## BACKGROUND

### A. Michael Borowiec

In November 1999, plaintiff Michael Borowiec purchased a Gateway Performance 600 PC computer and a three-year parts and on-site labor services contract from Gateway. In connection with the purchase, Gateway extended a limited money-back guarantee to Borowiec, upon notification to Gateway within 30 days of shipment of the computer and prompt return of the computer. Gateway also warranted that the computer was free from defects in materials and workmanship. Both the "Labor Services Service Contract" and the "Limited Warranty Agreement" contained a dispute resolution clause whereby the parties agreed that any dispute between them would be "resolved exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) and conducted under its rules."

In June 2000, Borowiec filed a complaint against

Gateway in the circuit court of Cook County. In the complaint, Borowiec alleged that the computer had numerous defects and nonconformities. Borowiec also alleged that Gateway refused to perform on-site repair of the computer. As a consequence, Borowiec delivered the computer to Gateway on numerous occasions for repair. Gateway was unable to repair the computer to Borowiec's satisfaction. On May 13, 2000, Borowiec revoked his acceptance of the computer. The complaint sought damages for breach of written and implied warranties pursuant to the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (Magnuson-Moss Act or MMWA) (15 U.S.C. § 2301 *et seq.* (1994)), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act[1] (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1998)), and common law fraud.

On September 1, 2000, Gateway filed a motion to dismiss the complaint, pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)), for lack of subject matter jurisdiction and to compel arbitration. The circuit court denied the motion to dismiss and Gateway appealed.

### B. Dorota and Tadeusz Kobik

In January 2001, plaintiffs Dorota and Tadeusz Kobik purchased a Gateway Performance 1000 PC computer, and a one-year on-site service, three-year labor and parts contract from Gateway. In connection with the purchase, Gateway extended a limited money-back guarantee to the Kobiks, upon notification to Gateway within 30 days of shipment of the computer and prompt return of the

---

[1]As to all the plaintiffs, we note that the claims for violation of the Consumer Fraud Act are premised on the alleged violations of the Magnuson-Moss Act. The plaintiffs allege that Gateway's requirement that the plaintiffs submit the disputes to final and binding arbitration is deceptive and constitutes a violation of the Consumer Fraud Act.

computer. Gateway also warranted that the computer was free from defects in materials and workmanship. The "Limited Warranty Agreement" contained a dispute resolution clause whereby the parties agreed that any dispute between them would be resolved exclusively and finally by arbitration administered by the NAF.

In October 2001, the Kobiks filed a complaint against Gateway in the circuit court of Cook County. In the complaint, the Kobiks alleged that the computer had numerous defects and nonconformities, including a defective hard drive. The Kobiks also alleged that Gateway refused to perform on-site repair of the computer. As a consequence, the Kobiks delivered the computer to Gateway on numerous occasions for repair. Gateway was unable to repair the computer and the Kobiks lost confidence in the computer's reliability. On August 30, 2001, the Kobiks revoked their acceptance of the computer. The complaint sought damages for breach of written and implied warranties pursuant to the Magnuson-Moss Act and violation of the Consumer Fraud Act.

Pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)), on October 22, 2001, Gateway filed a motion to dismiss the complaint or, in the alternative, to compel arbitration and stay the proceedings pending completion of arbitration. The circuit court denied the motion and Gateway appealed.

### C. Leslie Waldron

In November 2000, plaintiff Leslie Waldron purchased a Gateway Essential 866 computer and a labor services contract from Gateway. In connection with the purchase, Gateway extended a limited money-back guarantee to Waldron, upon notification to Gateway within 30 days of shipment of the computer and prompt return of the computer. Gateway also warranted that the computer was free from defects in materials and workmanship. The "Limited Warranty Agreement" contained a dispute

resolution clause whereby the parties agreed that any dispute between them would be resolved exclusively and finally by arbitration administered by the NAF.

In November 2001, Waldron filed a complaint against Gateway in the circuit court of Cook County. In the complaint, Waldron alleged that shortly after the purchase the computer exhibited numerous defects and nonconformities, including a defective CD-ROM, motherboard, power supply, and processor. Waldron also alleged that Gateway refused to perform on-site repair of the computer and required that Waldron bring the computer to Gateway's facility for repairs. Waldron delivered the computer to Gateway on numerous occasions for repair. Gateway was unable to repair the computer, and Waldron lost confidence in the computer's reliability. On October 1, 2001, Waldron revoked her acceptance of the computer. The complaint sought damages for breach of written and implied warranties pursuant to the Magnuson-Moss Act, revocation of acceptance pursuant to the Magnuson-Moss Act, and violation of the Consumer Fraud Act.

Pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)), on November 21, 2001, Gateway filed a motion to dismiss the complaint or, in the alternative, to compel arbitration and stay the proceedings pending completion of arbitration. The circuit court denied the motion, and Gateway appealed.

### D. Common Facts

In the consolidated appeals, the appellate court held that the Magnuson-Moss Act precluded binding arbitration of the consumer disputes. 331 Ill. App. 3d at 848. The court reasoned that Congress intended to preserve a judicial forum for consumers. 331 Ill. App. 3d at 848. Gateway's limited warranty agreement, with its binding arbitration clause, violated the Magnuson-Moss Act and

was therefore unenforceable. 331 Ill. App. 3d at 851. Accordingly, the court affirmed the decisions of the circuit court denying Gateway's motion to dismiss and compel arbitration.

We granted Gateway's petition for leave to appeal. We allowed the Chamber of Commerce of the United States of America and the Consumer Electronics Association to file an *amicus curiae* brief in support of Gateway. We also allowed the National Association of Securities and Commercial Law Attorneys to file an *amicus curiae* brief in support of the plaintiffs.

## ANALYSIS

### A. Standard of Review

As noted above, Gateway filed a motion to dismiss Borowiec's complaint for lack of subject matter jurisdiction and to compel arbitration pursuant to section 2—615 of the Code of Civil Procedure. See 735 ILCS 5/2—615 (West 2000). In the actions initiated by Waldron and the Kobiks, Gateway filed motions to dismiss and to compel arbitration pursuant to section 2—619 of the Code of Civil Procedure. See 735 ILCS 5/2—619 (West 2000). A section 2—615 motion to dismiss attacks the legal sufficiency of the complaint. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994). Such a motion does not raise affirmative factual defenses, but alleges only defects appearing on the face of the complaint. *Illinois Graphics*, 159 Ill. 2d at 484; *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 8 (1992). Thus, the question presented by a section 2—615 motion is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997); *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86-87 (1996). When ruling on a section 2—615 motion, a trial court is to dismiss the cause of action only if it is

clearly apparent that no set of facts can be proven which will entitle the plaintiff to recovery. *Bryson*, 174 Ill. 2d at 86-87; *Illinois Graphics*, 159 Ill. 2d at 488. A court of review determines *de novo* whether the trial court should have granted dismissal. *Beahringer v. Page*, 204 Ill. 2d 363, 369 (2003).

In contrast, a section 2—619 motion provides for the involuntary dismissal of a cause of action based on certain defects or defenses. Amongst the enumerated grounds for a section 2—619 dismissal are that the court does not have jurisdiction of the subject matter of the action (735 ILCS 5/2—619(a)(1) (West 2000)) and that the claim asserted is barred by other affirmative matter which avoids the legal effect of or defeats the claim (735 ILCS 5/2—619(a)(9) (West 2000)). Affirmative matter must be supported by affidavit, unless apparent on the face of the pleading attacked (735 ILCS 5/2—619(a) (West 2000)), and, in ruling on the motion, the trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189 (1997). The standard of review on appeal is *de novo*. *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 480 (1999); *Chicago Flood Litigation*, 176 Ill. 2d at 189.

Initially we note that Gateway's motion to dismiss Borowiec's complaint was for lack of subject matter jurisdiction and was supported by affidavit. The motion was more appropriately designated a motion pursuant to section 2—619 than a motion pursuant to section 2—615. Borowiec, however, was not prejudiced by the improper designation, and responded appropriately to the motion. Accordingly, we will consider the motion as though it had been filed under section 2—619. *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002); *City of Burbank v. Czaja*, 331 Ill. App. 3d 369, 374 (2002).

## B. Federal Arbitration Act

Turning to the merits of the appeal, we consider first the history and purpose of the Federal Arbitration Act (Arbitration Act or FAA) (9 U.S.C. § 1 *et seq.* (1994)). Congress enacted the Arbitration Act in 1925 "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 114 L. Ed. 2d 26, 36, 111 S. Ct. 1647, 1651 (1991). The Arbitration Act provides:

> "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction *** shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1994).

The Arbitration Act also provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. § 4 (1994). The Arbitration Act reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 74 L. Ed. 2d 765, 785, 103 S. Ct. 927, 941 (1983).

In *Gilmer*, 500 U.S. 20, 114 L. Ed. 2d 26, 111 S. Ct. 1647, the Court commented on the interplay between the Arbitration Act and statutory remedies created by Congress. The Court observed:

> "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA. Indeed, in recent years we have held enforceable arbitration agreements relating to claims arising under the Sherman Act, 15 U.S.C. §§ 1-7; § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); the civil provisions of the Racketeer Influenced and Corrupt

Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*; and § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2). [Citations.] In these cases we recognized that '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' [Citation.]

Although all statutory claims may not be appropriate for arbitration, '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.' [Citation.] In this regard, we note that the burden is on [the plaintiff] to show that Congress intended to preclude a waiver of a judicial forum for [the statutory] claims. [Citation.] If such an intention exists, it will be discoverable in the text of the [act], its legislative history, or an 'inherent conflict' between arbitration and the [act's] underlying purposes. [Citation.] Throughout such an inquiry, it should be kept in mind that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.' " *Gilmer*, 500 U.S. at 26, 114 L. Ed. 2d at 37, 111 S. Ct. at 1652.

Lastly, in *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 684-85, 134 L. Ed. 2d 902, 907, 116 S. Ct. 1652, 1655 (1996), the Supreme Court commented on the preemptive effect of the Arbitration Act:

"In *Southland*, we held that § 2 of the FAA applies in state as well as federal courts [citation] and 'withdr[aws] the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration,' [citation]. We noted in the pathmarking *Southland* decision that the FAA established a 'broad principle of enforceability,' [citation], and that § 2 of the federal Act provided for revocation of arbitration agreements only upon 'grounds as exist at law or in equity for the revocation of any contract.' In *Perry*, we reiterated: '[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes *its* meaning precisely

from the fact that a contract to arbitrate is at issue does not comport with [the text of § 2].' [Citation.]" (Emphasis in original.)

In the present case, both the labor services service contract and the limited warranty agreement contained a dispute resolution clause whereby the parties agreed that any dispute between them would be resolved by binding arbitration. Thus, the claims advanced by the plaintiffs are subject to arbitration unless the plaintiffs show that Congress intended to preclude a waiver of a judicial forum for their federal statutory claims. Further, plaintiffs' state law claims may not be premised solely on the fact that a contract to arbitrate is at issue. We turn then to provisions of the Magnuson-Moss Act.

C. The Magnuson-Moss Act

The Magnuson-Moss Act was enacted in 1975 to "improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a) (1994). To that end, the Magnuson-Moss Act establishes standards governing the content of consumer product warranties and service contracts. 15 U.S.C. §§ 2301 through 2308 (1994). The Magnuson-Moss Act also provides a statutory private right of action to consumers who are "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1) (1994). The consumer may bring an action in either federal or state court and may recover costs and expenses that were reasonably incurred in connection with the commencement and prosecution of the action. As part of costs and expenses, the consumer may recover attorney fees, unless the court determines that such an award is inappropriate. 15 U.S.C. § 2310(d)(2) (1994).

The Magnuson-Moss Act does not expressly prohibit arbitration, and, in fact, does not refer either to binding arbitration or to the Arbitration Act. The Magnuson-Moss Act does provide, however, that, prior to filing an action for failure to comply with any obligation under a written or implied warranty or service contract, a consumer give the person obligated under the warranty or service contract a reasonable opportunity to cure such failure to comply. 15 U.S.C. § 2310(e) (1994). Also, the Magnuson-Moss Act provides for the establishment of informal dispute settlement mechanisms, and authorizes the Federal Trade Commission (FTC) to prescribe rules setting forth the minimum requirements for the procedures. 15 U.S.C. § 2310(a) (1994). If a warrantor establishes an informal dispute settlement procedure which complies with the requirements of the FTC rules, and the warrantor incorporates in a written warranty a requirement that the consumer resort to such procedure, the consumer may not commence a civil action unless he initially resorts to the procedure. 15 U.S.C. § 2310(a)(3) (1994). Furthermore, in any civil action instituted by a consumer "arising out of a warranty obligation and relating to a matter considered in [the informal dispute resolution] procedure, any decision in such procedure shall be admissible in evidence." 15 U.S.C. § 2310(a)(3) (1994). The Magnuson-Moss Act nowhere defines the terms "informal dispute settlement procedures" and "informal dispute settlement mechanisms."

In enforcing the Magnuson-Moss Act, the FTC has determined that decisions of an informal dispute settlement mechanism "shall not be legally binding on any person" (16 C.F.R. § 703.5(j) (2003)) and has defined the term "mechanism" broadly to include binding arbitration. 40 Fed. Reg. 60167, 60210, 60211, 60218 (1975). The FTC has also ruled that "[a] warrantor shall not indicate in any written warranty or service contract

either directly or indirectly that the decision of the warrantor, service contractor, or any designated third party is final or binding in any dispute concerning the warranty or service contract." 16 C.F.R. § 700.8 (2003). In 1999, the FTC affirmed that the regulations "will continue to prohibit warrantors from including binding arbitration clauses in their contracts with consumers that would require consumers to submit warranty disputes to binding arbitration." 64 Fed. Reg. 19700, 19708-09 (1999).

### D. Binding Arbitration

The appellate court recognized that federal policy strongly favors the judicial enforcement of arbitration agreements. 331 Ill. App. 3d at 847. However, from its examination of the text of the Magnuson-Moss Act, the appellate court determined it was Congress' intent to ultimately preserve a judicial forum for consumers. 331 Ill. App. 3d at 848. In arriving at this conclusion, the appellate court noted the Magnuson-Moss Act provides that a decision in an informal dispute resolution procedure shall be admissible in evidence in any civil action arising out of a warranty obligation and relating to a matter considered in the informal dispute resolution procedure. 331 Ill. App. 3d at 849. The appellate court opined that an informal dispute settlement procedure is a prerequisite, not a bar, to relief in court. 331 Ill. App. 3d at 849. The appellate court also referenced legislative history to the effect that an informal dispute settlement procedure is not a bar to legal action. 331 Ill. App. 3d at 849-50. Lastly, the appellate court relied on the FTC's ruling that informal dispute resolution mechanisms, including arbitration, may not be binding upon the consumer.

In this court, plaintiffs urge affirmance of the appellate court decision. Plaintiffs ask that we defer to the FTC's interpretation of the Magnuson-Moss Act and argue that the agency's interpretation is supported by

the legislative history of the Act. Plaintiffs also maintain that, while the Arbitration Act policy favoring arbitration and the Magnuson-Moss Act consumer protection objectives are generally not in conflict, a conflict arises when a binding arbitration clause is inserted in an agreement purporting to extend a warranty to the consumer. Plaintiffs believe this conflict must be resolved by giving precedence to the Magnuson-Moss Act over the Arbitration Act. We disagree with the reasoning of the appellate court and the arguments advanced by plaintiffs.

In arriving at our decision, we note that the federal circuits which have considered the issue have rejected the FTC's interpretation. We find the Fifth Circuit's analysis in *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470 (5th Cir. 2002), particularly helpful. In *Walton*, the court of appeals reversed the district court's order denying the manufacturer's motion to compel arbitration of the consumer's Magnuson-Moss claim. The court first examined the roles of the judiciary and the FTC in interpreting the Magnuson-Moss Act:

> "When we review an agency's construction of a statute that it administers, we must defer to that agency's interpretation of the statute if: (1) Congress has not spoken directly to the issue; and (2) the agency's interpretation 'is based on a permissible construction of the statute.' [Citation.] 'The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent ... . If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.' " *Walton*, 298 F.3d at 475.

Next, the court examined the text of the Magnuson-Moss Act:

> "The text of the MMWA does not specifically address binding arbitration, nor does it specifically allow the FTC to decide whether to permit or to ban binding arbitration. Although the MMWA allows warrantors to require that

consumers use 'informal dispute settlement procedures' before filing a suit in court, and allows the FTC to establish rules governing these procedures, it does not define 'informal dispute settlement procedure.' However, the MMWA does make clear that these are to be used before filing a claim in court. Yet binding arbitration generally is understood to be a substitute for filing a lawsuit, not a prerequisite. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) ('By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum.')

\* \* \*

We also note that binding arbitration is not normally considered to be an 'informal dispute settlement procedure,' and it therefore seems to fall outside the bounds of the MMWA and of the FTC's power to prescribe regulations. We thus conclude that the text of the MMWA does not evince a congressional intent to prevent the use of binding arbitration." (Emphasis omitted.) *Walton,* 298 F.3d at 475-76.

The court then considered the legislative history of the Magnuson-Moss Act:

"The legislative history does not specifically discuss the availability of arbitration, nor does it define or shed light on the meaning of 'informal dispute settlement procedure.' The legislative history does indicate that such procedures were meant to be non-binding. For example, the House Report on the MMWA states that '[a]n adverse decision in any informal dispute settlement procedure would not be a bar to a civil action on the warranty involved in the proceeding ... .' H.R. Rep. No. 93—1107 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7702, 7723. The Conference Committee report also indicates that if a consumer chooses not to pursue an informal dispute settlement procedure, a consumer can still pursue 'all alternative avenues of redress.' S. Conf. Rep. No. 93—1408 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7755, 7758. However, there is still no evidence that Congress intended binding arbitration to be

considered an informal dispute settlement procedure. Therefore the fact that any informal dispute settlement procedure must be non-binding, does not imply that Congress meant to preclude binding arbitration, which is of a different nature. The legislative history's reference to 'civil action' neither explicitly includes nor precludes binding arbitration. However, the reference to 'informal dispute settlement procedure' seemingly precludes binding arbitration from its scope, as binding arbitration is not normally considered an informal procedure. Binding arbitration simply is not part of these reports. These passages therefore do not support an assertion that Congress intended to preclude binding arbitration. Additionally, the Conference Committee Report states that the legislation requires 'provision [by the warrantor] for governmental or consumer participation in internal or other private dispute settlement procedures ... .' *Id.* Again, this does not indicate an intent to preclude binding arbitration. It simply requires that the consumer (or perhaps the government) participate in the *informal* procedures established by the warrantor. The Committee cannot have had in mind binding arbitration in its comments, as the government does not normally participate in private binding arbitration procedures. Again, these congressional reports do not demonstrate that Congress intended for binding arbitration to be included within the scope of these informal dispute settlement procedures, nor that it intended to preclude binding arbitration under the MMWA." *Walton*, 298 F.3d at 476-77.

Lastly, the court examined the purposes of the Magnuson-Moss Act and considered whether they conflicted with the Arbitration Act:

"We do not see any inherent conflict between arbitration and these purposes. Consumers can still vindicate their rights under warranties in an arbitral forum. Warranties can provide adequate and truthful information to consumers, while also requiring binding arbitration. Arbitration is not inherently unfair to consumers. See *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995) ('Congress, when enacting the [FAA], had the needs of consumers ... in mind.') Although the legislative history of the MMWA expresses a concern

with the unequal bargaining power of consumers, *see* S. Rep. No. 93—151, at 22-23 (1973), a perception of unequal bargaining power is not enough to unilaterally hold arbitration agreements unenforceable. *See Gilmer*, 500 U.S. at 33, 111 S. Ct. 1647. Of course, courts can consider individual claims of fraud or unconscionability in arbitration agreements as they would in any other contract. *See id.* We thus can find no inherent conflict between the MMWA and the FAA." *Walton*, 298 F.3d at 478.

The court concluded that the text, legislative history, and purposes of the Magnuson-Moss Act do not evince a congressional intent to bar arbitration of written warranty claims. There being no doubt that Congress has expressed a clear intention in favor of arbitration, the court held the plaintiffs signed a valid binding arbitration agreement and must arbitrate their Magnuson-Moss claims. *Walton*, 298 F.3d at 478.

Similarly, in *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002), the court of appeals rejected the FTC's interpretation of the Magnuson-Moss Act. In doing so, the court employed an analysis similar to that used by the *Walton* court. The court reviewed the text and legislative history of the Magnuson-Moss Act as well as the purposes of the Magnuson-Moss Act and the Arbitration Act. The court found that the text of the Magnuson-Moss Act does not expressly prohibit arbitration. *Davis*, 305 F.3d at 1274-75. Further, Congress did not express a clear intent in the legislative history of the Magnuson-Moss Act to bar binding arbitration agreements in written warranties. *Davis*, 305 F.3d at 1274-77. The court also found that the declared purposes of the Magnuson-Moss Act do not evince such a conflict with the Arbitration Act as to prohibit binding arbitration of Magnuson-Moss claims. *Davis*, 305 F.2d at 1277.

Unlike the *Walton* court, however, the court in *Davis* also examined the reasonableness of the FTC's construction of the statute. Initially, the *Davis* court differentiated between the FTC's legislative regulations and the

FTC's interpretive regulations. The court noted that the *Chevron (Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 81 L. Ed. 2d 694, 104 S. Ct. 2776 (1984))* standard of deference applies to the FTC's legislative regulations and not to the interpretive regulations. The court observed that "while we must defer to the legislative regulations in 16 C.F.R. §§ 701.1–703.8 (2002) if they are reasonable, the FTC's interpretive regulations are only 'entitled to respect' to the extent they 'have the power to persuade.' " *Davis*, 305 F.3d at 1278 n.7.

Turning to the legislative regulations, the court noted that the FTC based its construction on Congress' grant of concurrent jurisdiction. The court observed, however, that a statute's provision for a judicial forum does not preclude enforcement of a binding arbitration agreement under the Arbitration Act. Consequently, the court concluded that the FTC's motive behind the legislative regulation is unreasonable. *Davis*, 305 F.3d at 1280. The court then referred to the FTC's interpretive regulations:

"The FTC further explained that binding arbitration agreements are not allowed in written warranties for several reasons:

First, as the Staff Report indicates, Congressional intent was that decisions of Section 110 Mechanisms not be legally binding. Second, even if binding Mechanisms were contemplated by Section 110 of the Act, the Commission is not prepared, at this point in time, to develop guidelines for a system in which consumers would commit themselves, at the time of product purchase, to resolve any difficulties in a binding, but non-judicial, proceeding. The Commission is not now convinced that any guidelines which it set out could ensure sufficient protection for consumers. 40 Fed. Reg. 60167, 60210 (1975)." *Davis*, 305 F.3d at 1278-79.

The court noted this rationale was also unreasonable:

"Although the FTC first stated that it looked to a subcommittee staff report (which appears to no longer be attainable) to determine Congress's intent, the FTC continued, evincing its major concern that an arbitral forum will not adequately protect the individual consumers. The Supreme Court in *McMahon*, however, rejected this same hostility shown by the SEC. 482 U.S. at 234 n.3, 107 S. Ct. at 2341 n.3 (declining to defer to the SEC's interpretation of the Securities Exchange Act of 1934 based on the SEC's *Wilko* attitude). Instead, the Supreme Court holds that arbitration is favorable to the individual. *See Allied-Bruce Terminix Cos.*, 513 U.S. at 279, 115 S. Ct. at 842-43 (noting that 'arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation.')" *Davis*, 305 F.3d at 1279.

The court concluded, "[a]fter a thorough review of the MMWA and the FAA, combined with the strong federal policy favoring arbitration," that written warranty claims arising under the Magnuson-Moss Warranty Act may be subject to valid binding arbitration agreements. *Davis*, 305 F.3d at 1280. See also *Southern Energy Homes, Inc. v. Ard*, 772 So. 2d 1131 (Ala. 2000); *In re American Homestar of Lancaster, Inc.*, 50 S.W.3d 480 (Tex. 2001); *Stacy David, Inc. v. Consuegra*, 845 So. 2d 303 (Fla. App. 2003); *Abela v. General Motors Corp.*, 257 Mich. App. 513, 669 N.W.2d 271 (2003); but see *contra Parkerson v. Smith*, 817 So. 2d 529 (Miss. 2002).

We also take note of the holding of *Harrison v. Nissan Motor Corp.*, 111 F.3d 343 (3d Cir. 1997). In *Harrison*, the defendant moved to dismiss the complaint because the plaintiff had failed to resort to an informal dispute resolution procedure provided by the defendant pursuant to the Pennsylvania Automobile Lemon Law. By the terms of the Lemon Law, the alternative dispute resolution procedure provided by the manufacturer had to comply with the FTC regulations promulgated under the Magnuson-Moss Act. The FTC regulations at issue

required alternative dispute resolution mechanisms to render a decision within 40 days of notification of the dispute. 16 C.F.R. § 703.5(d) (2003). The regulations also provided that a "requirement that a consumer resort to the Mechanism prior to commencement of an action \*\*\* shall be satisfied 40 days after notification to the Mechanism of the dispute or when the Mechanism completes all of its duties under \*\*\* this section, whichever occurs sooner." 16 C.F.R. § 703.5(i) (2003). The district court denied the motion to dismiss and the defendant appealed, arguing that the district court order denying the motion to dismiss was equivalent to an order denying a motion to compel arbitration under the Arbitration Act.

On appeal, the Third Circuit noted that for the Arbitration Act to apply, the party seeking to compel arbitration was required to show the existence of a written agreement that contained an arbitration clause and affected interstate commerce. *Harrison*, 111 F.3d at 348. The court found there was an "agreement *qua* agreement" between the parties to submit the dispute to the alternative dispute resolution mechanism. *Harrison*, 111 F.3d at 348 n.8. Although the warranty stated that the use of the mechanism was voluntary, and it alone did not constitute a sufficient written agreement, the warranty constituted an offer for dispute resolution that was accepted by the written request for dispute resolution sent by plaintiff's counsel to the mechanism. *Harrison*, 111 F.3d at 348 n.8. However, the alternative dispute resolution procedure at issue was not "arbitration" within the meaning of the Arbitration Act. The court explained:

"Although it defies easy definition, the essence of arbitration, we think, is that, when the parties agree to submit their disputes to it, they have agreed to arbitrate these disputes through to completion, i.e. to an award made by a third-party arbitrator. Arbitration does not occur until

the process is completed and the arbitrator makes a decision. Hence, if one party seeks an order compelling arbitration and it is granted, the parties must then arbitrate their dispute to an arbitrators' decision and cannot seek recourse to the courts before that time. [Citation.]

But the informal alternative dispute resolution process contemplated by the Lemon Law does not fit this characterization. Rather, while many cases in which claimants invoke the informal process will proceed to an arbitrator's award, some will not. That is because, under the FTC regulations with which a mechanism must comply, a dissatisfied car owner can file suit under the Lemon Law if he or she has not received a decision from the arbitrator after forty days. In other words, whatever the meaning of the 'first resort' requirement, a claimant cannot be barred from pursuing litigation under the Lemon Law if the mechanism delays for more than forty days. The claimant would not, therefore, pursue the procedure to completion in all cases. Under all these circumstances, the informal dispute resolution mechanism provided for by Nissan pursuant to the Lemon Law does not constitute arbitration within the meaning of the FAA.

\* \* \*

We find further support for the conclusion that the FAA does not apply to Lemon Law ADR procedures in the fact that the Lemon Law, the Magnuson-Moss Warranty Act, and the FTC regulations all refer to the procedure at issue as an 'informal dispute resolution procedure.' If the drafters had intended this procedure to be cognizable under the FAA, then it is likely that they would have referred to it as 'arbitration.' Indeed, the term 'arbitration' has come into this case solely because the [Mechanism] has labeled the second part of its procedures 'arbitration.' That alone is not sufficient to trigger the FAA. We, therefore, hold that Harrison and Nissan did not enter into a contract to arbitrate their dispute within the meaning of the FAA and that we lack jurisdiction over Nissan's appeal." *Harrison*, 111 F.3d at 350-51.

As noted above, the FTC believes that informal dispute resolution procedures include arbitration.

Further, according to the FTC, an agreement which contains a binding arbitration clause violates the provisions of the Magnuson-Moss Act because the Act provides that informal dispute resolution procedures cannot be binding on the consumer. By holding that an informal dispute resolution procedure does not qualify as "arbitration" under the Arbitration Act, *Harrison* calls into question the FTC's interpretation of the Magnuson-Moss Act.

In *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 335 (1996), quoting *Bowman v. Illinois Central R.R. Co.*, 11 Ill. 2d 186, 200 (1957), this court observed that "decisions of the Federal courts interpreting a Federal act *** are controlling upon Illinois courts, 'in order that the act be given uniform application.' " See also *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 266 (2001); *Wilson v. Norfolk & Western Ry. Co.*, 187 Ill. 2d 369, 383 (1999); *Boyer v. Atchison, Topeka & Santa Fe Ry. Co.*, 38 Ill. 2d 31, 34-35 (1967). This court has also noted that support for an agency's administrative pronouncements must be abandoned where the pronouncements are found by a reviewing court to be at odds with the law. *Castillo v. Jackson*, 149 Ill. 2d 165, 189 (1992). As discussed above, in *Walton* and *Davis*, the Fifth Circuit and the Eleventh Circuit ruled that the FTC's interpretation of the Magnuson-Moss Act is incorrect and a clause requiring binding arbitration of a consumer's claim does not violate the statute. And in *Harrison*, the Third Circuit cast doubt upon the FTC's ruling that informal dispute resolution procedures include arbitration. Accordingly, the federal circuit courts of appeals are in agreement in their interpretation of this federal statute. Because federal circuit court authority on the issue is uniform, we, too, hold that the Magnuson-Moss Act does not bar arbitration of a consumer's claims under the Act. See *Weiland v. Telec-*

*tronics Pacing Systems, Inc.*, 188 Ill. 2d 415, 422-23 (1999).

## E. Other Issues

In this court, plaintiffs raise additional issues regarding the validity of the arbitration clauses. Plaintiffs argue that the arbitration clauses are inconspicuous and are not "disclose[d] in simple and readily understood language," thus violating section 2302(a) of the Magnuson-Moss Act and the FTC regulations. Plaintiffs also argue that the arbitration clauses contain a fee-shifting provision and are therefore illegal under the Arbitration Act. Lastly, plaintiffs argue that the arbitration clauses are unenforceable, under ordinary state law principles, because of the fee-shifting provision and because there are exorbitant charges for the use of the arbitration procedure. We note that the complaints do not contain allegations in support of these claims and plaintiffs did not raise these arguments in the memoranda they filed in opposition to Gateway's motions to dismiss. We also note that the appellate court did not address the additional issues plaintiffs now raise. Lastly, we note that in *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997), the court required two customers who purchased a Gateway 2000 computer to submit their claims against Gateway to arbitration. In doing so, the court rejected several challenges to the validity of the Gateway arbitration clause. In light of these circumstances, we elect not to address plaintiffs' additional arguments.

## CONCLUSION

For the reasons stated above, in the absence of such grounds as exist at law or in equity for the revocation of any contract, the circuit court should have granted Gateway's motions to dismiss the complaints and compel arbitration. The judgments of the appellate and circuit

courts are therefore reversed and the causes are remanded to the circuit court for proceedings consistent with this opinion.

*Appellate court judgment reversed;*
*circuit court judgments reversed;*
*causes remanded.*

JUSTICE KILBRIDE, dissenting:

I join in Justice Rarick's dissent, but I write separately to raise several additional points, including my belief that the majority opinion runs afoul of the most fundamental of all statutory rules, namely, to construe statutes so as to effectuate the true intent of the drafters. See *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990) (stating that "[i]n interpreting a statute, the primary rule *** is to ascertain and give effect to the true intent and meaning of the legislature").

The Magnuson-Moss Act was specifically designed to protect consumers. See 15 U.S.C. § 2302(a) (1994) (stating the Magnuson-Moss Act was enacted "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products"). The result reached by the majority, however, directly undermines this purpose by permitting manufacturers to slip mandatory, binding arbitration provisions into nonnegotiable consumer product warranties and, thus, to limit consumers' avenues of relief in the event of a warranty dispute. Because I believe this result contradicts the legislature's intent to protect consumers' interests in product warranty disputes, I respectfully dissent.

In rejecting the FTC's regulations interpreting the Magnuson-Moss Act, the majority relies heavily on both *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470 (5th Cir. 2002) (209 Ill. 2d at 389-92), and *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268, 1276 (11th Cir. 2002) (209

Ill. 2d at 392-94). I cannot agree with the majority's approach to these cases.

In *Walton*, the federal appeals court applied the test adopted by the Supreme Court in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43, 81 L. Ed. 2d 694, 702-03, 104 S. Ct. 2778, 2781-82 (1984), to determine whether courts must defer to agencies' statutory interpretations. Under this test, a court must first determine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842, 81 L. Ed. 2d at 702-03, 104 S. Ct. at 2781. If the legislature's intent is clear and unambiguous, we must follow it. *Chevron*, 467 U.S. at 842-43, 81 L. Ed. 2d at 703, 104 S. Ct. at 2781. If Congress has not clearly addressed the issue before us, however, we must consider whether the agency's interpretation of the section is reasonable. *Chevron*, 467 U.S. at 843, 81 L. Ed. 2d at 703, 104 S. Ct. at 2781-82. " 'If [the agency's] choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.' " *Chevron*, 467 U.S. at 845, 81 L. Ed. 2d at 704, 104 S. Ct. at 2783, quoting *United States v. Shimer*, 367 U.S. 374, 383, 6 L. Ed. 2d 908, 915, 81 S. Ct. 1554, 1560 (1961).

In the instant case, I believe the majority has unwisely chosen to follow the *Walton* court's erroneous conclusion on prong one of the *Chevron* test. 209 Ill. 2d at 389 (finding the *Walton* analysis "particularly helpful"). The *Walton* court held that Congress had spoken directly to the precise issue of whether binding arbitration provisions are permissible in consumer product warranties. *Walton*, 298 F.3d at 478 (stating that "[t]he clear congressional intent in favor of enforcing valid arbitration agreements controls in this case"). That mistaken

conclusion, in turn, obviated the need to reach the second prong of the *Chevron* analysis and, thus, to address the reasonableness of the FTC's interpretation. *Walton*, 298 F.3d at 478 n.14.

The *Walton* court's error is apparent from both the text and the legislative history of the Magnuson-Moss Act. Notably, the text of the Act is completely silent concerning its interaction with the Arbitration Act in consumer warranty cases. *Walton*, 298 F.3d at 475 (acknowledging that the text did not address the permissibility of binding arbitration clauses in consumer warranties). Under the *Chevron* analysis, if the statute is silent on a given issue, we must next consider whether the agency's construction of the statute is permissible. *Chevron*, 467 U.S. at 843, 81 L. Ed. 2d at 703, 104 S. Ct. at 2782. Thus, since the statute itself is silent on the precise question at issue here, the *Walton* court should have proceeded to prong two of the analysis. At best, the statute's silence necessarily creates a strong ambiguity regarding Congress' true intent on this issue. By overlooking the absence of any language in the Magnuson-Moss Act directly addressing its potential conflict with the Arbitration Act and rushing headlong to the conclusion that Congress has directly spoken on this precise question, the majority in both *Walton* and this case ignore the express directive of the Supreme Court established in the *Chevron* test. Since the Magnuson-Moss Act is undisputedly silent on this issue, this court should proceed with an analysis of prong two of the *Chevron* test and consider whether the FTC's regulations are "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844, 81 L. Ed. 2d at 703, 104 S. Ct. at 2782.

In addition, yet another material ambiguity exists in the Magnuson-Moss Act, precluding adoption of the *Walton* court's conclusion that Congress had already directly

spoken to this issue. The scope of the term "informal dispute settlement procedures" in section 2310 is directly at issue here, yet it is not at all clear whether Congress intended that term to include mandatory binding arbitration. This additional ambiguity in the text of the Magnuson-Moss Act again requires reviewing courts to examine the second prong of the *Chevron* test and determine the reasonableness of the FTC's interpretation. See *Chevron*, 467 U.S. at 843, 81 L. Ed. 2d at 703, 104 S. Ct. at 2782 (explaining that "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute"). I believe that here the statutory language is inherently ambiguous and, thus, a reviewing court must proceed to prong two of the *Chevron* analysis. Due to the *Walton* court's failure to recognize any of these ambiguities, however, it erroneously concluded its analysis under prong one of the *Chevron* test.

Moreover, the Supreme Court has explained that, in examining the first prong of the *Chevron* test, courts should view the relevant statutory language in context and with an eye toward advancing the overall statutory scheme. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33, 146 L. Ed. 2d 121, 133-34, 120 S. Ct. 1291, 1300-01 (2000). While the *Walton* court purported to review the relevant legislative history, it appears to have applied the wrong standard in conducting the *Chevron* test. *Walton*, 298 F.3d at 276-77. The court required a showing that the legislature clearly intended to preclude the arbitration of claims under the Magnuson-Moss Act before it would proceed to prong two of the *Chevron* test. *Walton*, 298 F.3d at 477. As stated in *Chevron*, the actual test under prong one is not whether the legislature expressed a clear intent to adopt the premise underlying the regulation subsequently issued

by the agency but, rather, whether the "statute is silent or ambiguous with respect to the specific issue." *Chevron*, 467 U.S. at 843, 81 L. Ed. 2d at 703, 104 S. Ct. at 2782. I believe that, at most, when reviewed under the proper standard, the legislative histories of the relevant acts demonstrate the ambiguous nature of the relationship between section 2310 and the Arbitration Act. Thus, the majority's reliance on *Walton* is misplaced.

In *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268, 1276 (11th Cir. 2002), cited with favor by the majority here (209 Ill. 2d at 392-94), the federal appeals court also concluded that the legislative history of the Magnuson-Moss Act "is ambiguous at most." As the *Davis* court noted, a preliminary Senate report on the Magnuson-Moss Act stated that " 'it is Congress' intent that warrantors of consumer products cooperate with government and private agencies to establish informal dispute settlement mechanisms that take care of consumer grievances without the aid of litigation or *formal arbitration*.' " (Emphasis added.) *Davis*, 305 F.3d at 1276, quoting S. Rep. No. 91—876, at 22-23 (1970). Viewed in this context, the congressional intent underlying section 2310 is not at all clear from the statutory language and legislative history, contrary to the *Walton* court's conclusion. Accordingly, the *Davis* court concluded that "the intent of Congress is unclear," requiring it to proceed to prong two of the *Chevron* test. *Davis*, 305 F.3d at 1278.

Although the majority also supports its decision by looking to *Harrison v. Nissan Motor Corp.*, 111 F.3d 343 (3d Cir. 1997), I fail to see how *Harrison* adds any substantial support to the result reached in this case. *Harrison* held that a voluntary, nonbinding arbitration provision in a car warranty does not qualify as "a contract to arbitrate their dispute within the meaning of the FAA," thus leaving the court without jurisdiction over the appeal. *Harrison*, 111 F.3d at 351. This is not

the same case. Here, a *mandatory, binding* arbitration provision, that is nonnegotiable and was unilaterally created by Gateway, effectively cuts off all consumers' rights to any opportunity for judicial recourse.

Despite the widely conflicting analyses in *Walton* and *Davis*, and the tangential and inapposite reference to *Harrison*, the majority in this case attempts to support its result by citing the uniformity of the federal appellate courts that have reviewed the issue. 209 Ill. 2d at 397-98. Even a cursory examination of the *Walton* and *Davis* decisions, however, reveals that they could not be further apart in their rationales. Thus, the purported uniformity of the federal circuit courts of appeals relied on here by the majority is illusory. Regrettably, the majority opinion does not adopt a single rationale based on either of these cases, appearing instead to apply both. 209 Ill. 2d at 397-98. Without any explanation of the specific rationale used to decide this case, the majority's opinion fails to provide any guidance for future cases. I cannot countenance such an open-ended approach to setting precedent in this state.

I also believe the majority has ignored a basic rule of statutory construction by approving the rationale in *Walton*. The *Walton* court failed to apply the long-standing general rule that more recent and specific legislation prevails over broader, earlier legislation. *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002). See 209 Ill. 2d at 416, 424 (Rarick, J., dissenting, joined by Kilbride, J.). Recently, the United States Supreme Court also applied this fundamental rule of construction.

> "The 'classic judicial task of reconciling many laws enacted over time, and getting them to "make sense" in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute.' [Citation.] This is particularly so where the scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand. As we recognized recently

***, 'a specific policy embodied in a later federal statute should control our construction of the [earlier] statute, even though it ha[s] not been expressly amended.' [Citation.]" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143, 146 L. Ed. 2d 121, 140, 120 S. Ct. 1291, 1306 (2000).

Here, the Magnuson-Moss Act was passed 50 years after the Arbitration Act and expressly addressed consumer warranty issues. In contrast, the Arbitration Act concerned the use of arbitration in general contract disputes. Under the applicable rule of construction, the Magnuson-Moss Act trumps the Arbitration Act when addressing arbitration clauses in consumer warranties because it was enacted after the Arbitration Act and deals directly with the consumer warranty issue.

The *Walton* court relied exclusively on the favorable treatment of arbitration reflected in the Arbitration Act. *Walton*, 298 F.3d at 474. Thus, the court relied on "a general policy expressed in a prior, less specific statute. The Supreme Court has never invoked similar reasoning in applying the first prong of the *Chevron* inquiry." *Walton*, 298 F.3d at 483 (King, C.J., dissenting). In doing so, the majority in *Walton* failed to recognize the precedence that the Magnuson-Moss Act had over the Arbitration Act in consumer warranty cases such as this one. By approving of the *Walton* rationale, this court has duplicated this error.

Finally, if the Act is viewed in the proper historical context, it is apparent that the disputed terms "informal dispute settlement procedures" and "informal dispute settlement mechanisms" fail to support the *Walton* court's conclusion that the Magnuson-Moss Act was not intended to preclude mandatory binding arbitration. See *Walton*, 298 F.3d at 476. Assuming, *arguendo*, that the Act is unambiguous, these terms must be considered in light of their meaning in 1975, when the Magnuson-Moss Act was enacted. The *Walton* court appears to have er-

roneously based its conclusion on its belief that, *under today's standards,* "binding arbitration is normally considered to be an 'informal dispute settlement procedure,' and *** therefore seems to fall outside the bounds of the MMWA and of the FTC's power to prescribe regulations." *Walton,* 298 F.3d at 476. That is not the correct context for reviewing the meaning of the statutory language. Statutes are to be construed to effectuate the intent of the drafters *at the time of their adoption. Sayles v. Thompson,* 99 Ill. 2d 122, 125 (1983).

In 1975, contractual arbitration outside the context of labor law was not the same highly evolved creation it is today, and binding arbitration was not the norm. Today, binding arbitration is quite formalized, with many of the trappings of traditional litigation, but in 1975, it was in its relative infancy. See 4 Am. Jur. 2d *Alternative Dispute Resolution* § 1, at 64 (1995). See also *Walton,* 298 F.3d at 484 (King, C.J., dissenting). I believe it is error to apply today's standards to determine whether the "informal dispute settlement procedures" prohibited by the Magnuson-Moss Act include mandatory binding arbitration clauses in consumer warranties. As viewed in 1975, "informal dispute settlement procedures" were equivalent to today's "alternative dispute resolution" and meant any nonjudicial redress mechanisms. See 4 Am. Jur. 2d *Alternative Dispute Resolution* § 1, at 64-65 (1995).

A leading advocate of arbitration at the time, the American Arbitration Association, referred to arbitration as a settlement mechanism (American Arbitration Association, A Dictionary of Arbitration and Its Terms—Labor—Commercial—International, A Concise Encyclopedia of Peaceful Dispute Settlement 12 (1970)), and the plain and ordinary meaning of the word "arbitrate" included "[t]o submit to settlement or judgment by arbitration" (American Heritage Dictionary of the

English Language 87 (1969)). It is a fundamental rule of statutory construction that the plain and ordinary meaning of the language employed by the drafters is the best evidence of their intent. *Lulay v. Lulay*, 193 Ill. 2d 455, 466 (2000). Moreover, the Supreme Court was also contemporaneously using the term "dispute settlement" to include arbitration, reflecting the widely held view that arbitration was a "dispute settlement procedure." *Detroit & Toledo Shore Line R.R. Co. v. United Transportation Union*, 396 U.S. 142, 149-50, 24 L. Ed. 2d 325, 332-33, 90 S. Ct. 294, 298-99 (1969).

Thus, the Magnuson-Moss Act's prohibition of "legally binding" mechanisms (16 C.F.R. § 703.5(j) (2003)) is properly interpreted to mean that permissible "informal dispute settlement procedures," including arbitration, may not preclude subsequent judicial redress. Arbitration may, however, be a necessary condition precedent to litigation under the Magnuson-Moss Act. In any case, it may not be the exclusive remedy for claims involving consumer warranties.

This interpretation comports with the primary purpose of the Magnuson-Moss Act, that is, to protect consumers. See 15 U.S.C. § 2302(a) (2000) (stating the Magnuson-Moss Act was enacted "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products"). The result reached by the majority directly conflicts with this purpose by approving manufacturers' unilateral inclusion of mandatory, binding arbitration provisions in consumer product warranties. As a practical matter, these warranties are contracts of adhesion, and the binding arbitration provisions are non-negotiable. Consumers possess disparate bargaining power and are faced with the dilemma of having to either " 'take it or leave it.' " *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 72 (1990). Thus, even

though the Magnuson-Moss Act was intended to improve competition, under the majority's ruling consumers have no ability to shop for products without these overreaching, binding arbitration provisions. Under these circumstances, permitting manufacturers to cut off consumers' right to a judicial remedy and review cannot be construed as upholding the legislature's true intent in drafting the Magnuson-Moss Act. Such a result flies in the face of Congress' express desire to protect average consumers from harmful overreaching in consumer product warranties. See 15 U.S.C. § 2303(a) (2000).

For these reasons, as well as those outlined in Justice Rarick's dissent, I respectfully dissent from the majority opinion in this case.

JUSTICE RARICK joins in this dissent.

JUSTICE RARICK, also dissenting:

This appeal presents a single question: Does the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (the Magnuson-Moss Warranty Act) (15 U.S.C. § 2301 *et seq.* (1994)) prohibit a seller of consumer goods from requiring purchasers to waive their judicial remedies and submit their warranty claims to binding arbitration? In three separate lawsuits, the circuit court of Cook County held that it did. Based on that conclusion, the court denied motions filed by the seller to dismiss the purchasers' complaints or to compel arbitration and stay the proceedings pending outcome of the arbitration. The seller appealed. The appellate court consolidated the appeals and affirmed. 331 Ill. App. 3d 842. We subsequently granted the seller's petition for leave to appeal. 177 Ill. 2d R. 315. For the reasons that follow, I would affirm the judgment of the appellate court.

The plaintiffs in the cases before us are Michael Borowiec, Tadeusz and Dorota Kobik, and Leslie Waldron. Borowiec's complaint alleged that in November of

1999, he purchased a personal computer from Gateway 2000, now doing business as Gateway, Inc. According to the complaint, Borowiec began experiencing "numerous defects and non-conformities within the computer" shortly after he bought it. Borowiec alleged that Gateway had intentionally or recklessly misrepresented to him that his service contract with Gateway for labor services provided for on-site repair, and that when he requested on-site repair, Gateway refused and required him to bring the computer to a Gateway facility for service. Borowiec further alleged that despite repeated attempts to obtain redress from Gateway pursuant to a warranty which the company had issued when it sold the computer to him, Gateway refused to honor the warranty, and the defects in his computer remain uncorrected.

According to Borowiec's complaint, he revoked acceptance of the computer based on the foregoing acts or omissions by Gateway and filed this action against the company to recover his damages. Borowiec's complaint asserted four claims for relief: (1) breach of written warranty pursuant to the Magnuson-Moss Warranty Act, (2) breach of implied warranty pursuant to the Magnuson-Moss Warranty Act, (3) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1998)) and (4) common law fraud.

The complaint filed by Tadeusz and Dorota Kobik paralleled the one filed by Borowiec. It alleged that the Kobiks purchased their computer from Gateway on or about January 31, 2001, and shortly thereafter "began to experience numerous defects and nonconformities" with the machine. As did Borowiec, the Kobiks asserted that Gateway had intentionally or recklessly misrepresented to them that their service contract with Gateway for labor services provided for on-site repair, and that when they requested on-site repair, Gateway refused and

required them to bring the computer to a Gateway facility for service. The Kobiks further alleged that despite repeated attempts to obtain redress from Gateway pursuant to a warranty which the company had issued when it sold the computer to them, Gateway refused to honor the warranty and the defects in their computer remain uncorrected.

As a result of the defects and nonconformities with the computer, the Kobiks gave written notice to Gateway that they were revoking acceptance of the unit. This litigation followed. As grounds for their complaint, the Kobiks asserted claims for (1) breach of written warranty pursuant to the Magnuson-Moss Warranty Act, (2) breach of implied warranty pursuant to the Magnuson-Moss Warranty Act, and (3) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. Unlike Borowiec, they did not include a count based on common law fraud.

The complaint filed by Leslie Waldron, the fourth plaintiff involved in this litigation, was similar. Waldron alleged that she purchased a computer and services from Gateway in November of 2000. Shortly thereafter, she discovered that the computer was defective. According to Waldron's complaint, the defects and nonconformities in the unit violated both the express written warranty issued to her by Gateway and an implied warranty of merchantability. Waldron contended that despite numerous attempts to have Gateway repair the unit, the defects remain uncorrected. Waldron further contended that Gateway had intentionally or recklessly misrepresented to her that her service contract with Gateway for labor services provided for on-site repair, and that when she requested on-site repair, Gateway refused and required her to bring the computer to a Gateway facility for repairs. Waldron subsequently revoked acceptance of the computer, which, she alleged, remains in a defective and

nonconforming condition, and brought this action against Gateway for damages. Her complaint alleged: (1) breach of a written warranty pursuant to the Magnuson-Moss Warranty Act, (2) breach of an implied warranty pursuant to the Magnuson-Moss Warranty Act, (3) revocation of acceptance pursuant to the Magnuson-Moss Warranty Act, and (4) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

Gateway filed a motion to dismiss Borowiec's complaint, arguing that under the terms of the warranty it issued when it sold the computer to Borowiec, Borowiec had agreed to waive his right to seek redress in the courts and was obligated by the warranty's provisions to submit any claims he might have to arbitration. In Gateway's view, that arbitration provision in the warranty divested the circuit court of subject matter jurisdiction to consider Borowiec's complaint on the merits.[2] The circuit court was only empowered to compel Borowiec to submit to arbitration.

The circuit court disagreed and denied Gateway's motion to dismiss. Following an unsuccessful effort by Gateway to remove the action to federal court, the company sought interlocutory review in the appellate

---

[2]Gateway purported to base its motion on section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)). Where, as here, a defendant in a civil action challenges the circuit court's subject matter jurisdiction, dismissal is properly sought under section 2—619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(1) (West 1998)), rather than section 2—615. Sound practice dictates that motions be correctly designated. Nevertheless, reversal based on misdesignation is necessary only if the error has prejudiced the nonmoving party. See *Scott Wetzel Services v. Regard*, 271 Ill. App. 3d 478, 481 (1995). There is nothing in the record before us to suggest that Borowiec suffered any such prejudice. He clearly understood Gateway's position and was able to address it on the merits.

court pursuant to Supreme Court Rule 307 (188 Ill. 2d R. 307).[3]

In the Kobiks' case, Gateway filed a motion under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619(a)(1) (West 1998)) to dismiss the complaint based on the arbitration provision in the warranty issued to the Kobiks when they bought their computer. In the alternative, Gateway asked for an order compelling the Kobiks to submit their claims to arbitration and staying their civil action until the arbitration was completed. Gateway's motion was denied. Immediately thereafter, the company filed a notice of interlocutory appeal pursuant to Supreme Court Rule 307.

Waldron's case proceeded in exactly the same way. Invoking the arbitration clause in the warranty that came with Waldron's computer, Gateway moved to dismiss her complaint under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619(a)(1) (West 1998)) or, in the alternative, to compel arbitration and stay proceedings pending the completion of arbitration. As in Borowiec's case and the litigation brought by the Kobiks, that motion was denied and Gateway brought an interlocutory appeal under Supreme Court Rule 307.

The appellate court consolidated Gateway's appeals in each of the three cases and affirmed the orders entered by the circuit court. In ruling as it did, the appellate

---

[3]Denial of a motion to dismiss and to compel arbitration is appealable under Rule 307, which governs interlocutory appeals as of right, because demanding that court proceedings be halted and that a dispute be sent to arbitration is analogous to a motion seeking injunctive relief. See *Bass v. SMG, Inc.*, 328 Ill. App. 3d 492, 496 (2002). Rule 307(a) requires the notice of appeal to be filed within 30 days of the circuit court's order. Although the notice in Borowiec's case was not filed until several months after the circuit court ruled, the filing period was tolled by the removal proceedings (see *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 155 (1992)), and Gateway does not argue that Borowiec's appeal was untimely.

court noted that under the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (1994)), written contractual provisions requiring arbitration of disputes are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The court further opined, however, that in the case of consumer transactions, Congress has overridden the Federal Arbitration Act through the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.* (1994)). The court held that the Magnuson-Moss Warranty Act and the regulations adopted by the Federal Trade Commission (FTC) pursuant to the Act prohibit the type of binding arbitration provisions contained in Gateway's warranties. Accordingly, the court concluded that those arbitration provisions are unenforceable. Consistent with that conclusion, the court found that the arbitration provisions cannot operate as a bar to the plaintiffs' claims in circuit court and that Gateway's motions to dismiss or to compel arbitration and stay the circuit court proceedings were therefore properly denied.

In undertaking review of the appellate court's judgment, I begin by noting that the issues before us have arisen in the context of motions to dismiss. A motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim. See *Busch v. Bates*, 323 Ill. App. 3d 823, 831-32 (2001). For purposes of reviewing a court's ruling on a defendant's motion to dismiss, this court accepts as true the well-pleaded allegations of the plaintiff's complaint. *Board of Managers of the Village Centre Condominium Ass'n v. Wilmette Partners*, 198 Ill. 2d 132, 134 (2001). Motions to dismiss under section 2—619 of the Code of Civil Procedure present a question of law, which we review *de novo.* *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 411 (2002).

Central to the dispute before us is Gateway's "Limited Warranty and Terms and Conditions Agreement," which governed the purchase of the computers in all three of the cases at issue here. The "Limited Warranty and Terms and Conditions Agreement" contains a dispute resolution clause, which reads:

"You agree that any Dispute between You and Gateway will be resolved exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) \*\*\*. \*\*\* Any decision rendered in such arbitration proceedings will be final and binding on each of the parties \*\*\*. \*\*\* You understand that You would have had a right to litigate disputes through a court, and that You have expressly and knowingly waived that right and agreed to resolve any Disputes through binding arbitration. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Section 1, et seq."[4]

Section 2 of the Federal Arbitration Act provides, in relevant part:

"A written provision in \*\*\* a contract evidencing a

---

[4]Gateway's binding arbitration provisions have evolved in the wake of court challenges. A prior version specified that arbitrations were to be conducted in accordance with the rules of Conciliation and Arbitration of the International Chamber of Commerce. Those rules required consumers to pay up-front fees that exceeded the cost of most Gateway products and to bear Gateway's legal fees if the consumer did not prevail. In addition, the rules mandated that all arbitrations were to be held in Chicago regardless of where the consumer resided, and that all correspondence regarding the arbitration was to be sent to the International Chamber of Commerce's headquarters in France. In *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 676 N.Y.S.2d 569 (1998), the New York Supreme Court, Appellate Division, found this to be unconscionable ànd therefore invalidated the arbitration agreement to the extent that it required arbitration before the International Chamber of Commerce. The court in *Brower* was not asked to resolve the more basic question presented by this case, namely, whether the binding arbitration clause violated the Magnuson-Moss Warranty Act.

transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, *** shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1994).

Although plaintiffs in each of the three cases before us asserted in their complaints that they revoked their contracts with Gateway, they do not argue, for the purposes of this appeal, that the revocations avoided the effect of the arbitration requirement in the contracts' dispute resolution clauses. Nor do they dispute that the arbitration requirement would be valid and enforceable under the Federal Arbitration Act, standing alone. Their contention is that the Federal Arbitration Act has been superseded by the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.* (1994)) in cases involving consumer transactions and that under the Magnuson-Moss Warranty Act and the regulations adopted by the Federal Trade Commission pursuant thereto, arbitration requirements of this kind are prohibited.

The Federal Arbitration Act, 43 Stat. 883, was originally enacted in 1925 and then reenacted and codified in 1947 as title 9 of the United States Code. The purpose of the law was to reverse a long-standing hostility by the courts to arbitration agreements and to place arbitration agreements on the same footing as other contracts. *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 289, 151 L. Ed. 2d 755, 765, 122 S. Ct. 754, 761 (2002), quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 114 L. Ed. 2d 26, 36, 111 S. Ct. 1647, 1651 (1991). The Supreme Court has construed the Act's provisions as establishing a liberal federal policy favoring arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 74 L. Ed. 2d 765, 785, 103 S. Ct. 927, 941 (1983). In accordance with that policy, the Supreme Court

has held that courts have a duty to enforce arbitration agreements subject to the Act. See *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 96 L. Ed. 2d 185, 193, 107 S. Ct. 2332, 2337 (1987). The Court has further held, however, that the mandates of the Federal Arbitration Act are not absolute. As with any statutory directives, they may be overridden by a contrary congressional command. *McMahon*, 482 U.S. at 226, 96 L. Ed. 2d at 194, 107 S. Ct. at 2337.

To defeat application of the Federal Arbitration Act based on conflicting federal legislation, the party opposing arbitration of a dispute has the burden of showing that Congress intended to preclude a waiver of judicial remedies for the rights at issue. Such an intent may be discerned from the text of the congressional enactment or the enactment's legislative history or through the existence of an inherent conflict between arbitration and the enactment's underlying purposes. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 114 L. Ed. 2d 26, 37, 111 S. Ct. 1647, 1652 (1991).

The Magnuson-Moss Warranty Act, the statute in question here, was enacted in 1975, 50 years after passage of the Federal Arbitration Act. While the Federal Arbitration Act deals generally with contractual arbitration agreements, the Magnuson-Moss Warranty Act was designed for a more specific purpose, namely, "to improve the adequacy of information available to consumers [and] prevent deception" in connection with written warranties issued with consumer products. 15 U.S.C. § 2302(a) (1994).

In keeping with its purposes, the Magnuson-Moss Warranty Act sets out clear and comprehensive requirements regarding disclosures, duties, and remedies associated with warranties on consumer products. Products covered by the Act include any "tangible personal property which is distributed in commerce and which is normally used for personal, family, or household pur-

poses." 15 U.S.C. § 2301(1) (1994). There is no dispute that the computers purchased by the plaintiffs in this case fell within this definition and that the warranties issued by Gateway on those computers were subject to the Magnuson-Moss Warranty Act's requirements.

While the Federal Arbitration Act calls for enforcement of arbitration agreements, the Magnuson-Moss Warranty Act specifically provides that where a consumer has been damaged by the failure of a supplier, warrantor or service contractor to comply with any obligation under the Act or under a written warranty, implied warranty or service contract, the consumer "may bring suit for damages and other legal relief *** in any court of competent jurisdiction in any State or the District of Columbia." 15 U.S.C. § 2310(d)(1)(A) (1994). An aggrieved consumer is also given the option of suing in federal court if certain restrictions are met. 15 U.S.C. § 2310(d)(1)(B) (1994). Moreover, if the consumer "finally prevails" in the litigation, the Act authorizes the court to award the consumer his costs and expenses, including his attorney fees. 15 U.S.C. § 2310(d)(2) (1994).

The right conferred on consumers by the Act to seek redress in the courts is subject to two basic conditions. First, where an individual consumer complains that a company obligated under a warranty has failed to comply with its warranty obligations, the consumer must afford the company a reasonable opportunity to cure such failure before he brings suit. 15 U.S.C. §§ 2310(d)(1), (e) (1994). Second, if a warrantor has established informal dispute settlement procedures that comply with rules established by the Federal Trade Commission, the warrantor may require the consumer to resort to those procedures before pursing any legal remedies in the courts. 15 U.S.C. § 2310(a)(3)(C) (1994).

When Congress enacted the Magnuson-Moss Warranty Act, it did not include within the statute itself a

detailed listing of the standards a warrantor's informal dispute settlement procedures must meet. Rather, it delegated authority for prescribing the minimum standards for such procedures to the Federal Trade Commission. 15 U.S.C. § 2310(a)(2) (1994). Pursuant to that authority, the FTC has adopted a comprehensive set of legislative regulations governing informal dispute procedures. 16 C.F.R. § 703.1 *et seq.* (2002). Those regulations provide that the decisions of any informal dispute resolution procedure incorporated into the terms of a written warranty "shall not be legally binding on any person." 16 C.F.R. § 703.5(j) (2002). Interpretive regulations adopted by the FTC further provide that a

"warrantor shall not indicate in any written warranty or service contract either directly or indirectly that the decision of the warrantor, service contractor, or any designated third party is final or binding in any dispute concerning the warranty or service contract." 16 C.F.R. § 700.8 (2002).

The FTC's legislative regulations were adopted in 1975. Its interpretive regulations were issued in 1977. Those regulations have now been followed by the FTC for over a quarter century without deviation. As recently as 1999, the FTC reaffirmed its position. In a regulatory review statement published in April of that year, the FTC determined that it would not amend 16 C.F.R. § 703.5(j) to allow for binding arbitration and that 16 C.F.R. pt. 703 "will continue to prohibit warrantors from including binding arbitration clauses in their contracts with consumers that would require consumers to submit warranty disputes to binding arbitration." 64 Fed. Reg. 19,700, 19,708-09 (eff. April 22, 1999).

In view of the statutory and regulatory provisions I have just detailed, numerous federal district courts have held that the Magnuson-Moss Warranty Act overrides the mandates of the Federal Arbitration Act and prohibits warrantors from requiring consumers to waive their

judicial remedies in favor of binding arbitration where, as here, an express written warranty is involved. See *Wilson v. Waverlee Homes, Inc.*, 954 F. Supp. 1530, 1538-39 (M.D. Ala. 1997), *aff'd*, 127 F.3d 40 (11th Cir. 1997); *Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423 (M.D. Ala. 1997), *remanded on jurisdictional grounds*, 188 F.3d 1294 (11th Cir. 1999); *Rhode v. E&T Investments, Inc.*, 6 F. Supp. 2d 1322 (M.D. Ala. 1998); *Pitchford v. Oakwood Mobile Homes, Inc.*, 124 F. Supp. 2d 958, 963-65 (W.D. Va. 2000); *Raesly v. Grand Housing, Inc.*, 105 F. Supp. 2d 562, 573 (S.D. Miss. 2000); *Yeomans v. Homes of Legend, Inc.*, No. 00—D—824—N (M.D. Ala. March 5, 2001); *Brown v. Kline Tysons Imports, Inc.*, 190 F. Supp. 2d 827, 830-31 (E.D. Va. 2002); see *Walton v. Rose Mobile Homes, LLC*, 298 F.3d 470 (5th Cir. 2002) (King, C.J., dissenting). State trial courts (see *Philyaw v. Platinum Enterprises, Inc.*, No. CL00—236 (Va. Cir. Ct. 2001)), intermediate appellate courts (see *In re Van Blarcum*, 19 S.W.3d 484, 491-92 (Tex. Ct. App. 2000)), and courts of last resort (see *Parkerson v. Smith*, 817 So. 2d 529, 533-35 (Miss. 2002); *Southern Energy Homes, Inc. v. Lee*, 732 So. 2d 994 (Ala. 1999)) have taken the same view.

The judgment of the appellate court now before us for review adhered to that precedent. Several courts in other jurisdictions have recently adopted a contrary position. A divided three-judge panel of the United States Court of Appeals for the Fifth Circuit has held that the Magnuson-Moss Warranty Act is not an exception to the Federal Arbitration Act and does not preclude warrantors from requiring binding arbitration of claims asserted under written warranties. *Walton v. Rose Mobile Homes, LLC*, 298 F.3d 470 (5th Cir. 2002). Its interpretation is now shared by the Eleventh Circuit (see *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002)) and has been adopted by the Supreme Courts of

Texas (see *In re American Homestar of Lancaster, Inc.*, 50 S.W.3d 480 (Tex. 2001), *directing appellate court to vacate order in In re Van Blarcum*, 19 S.W.3d 484 (Tex. Ct. App. 2000)), and Alabama (see *Southern Energy Homes, Inc. v. Ard*, 772 So. 2d 1131 (Ala. 2000), *overruling Southern Energy Homes, Inc. v. Lee*, 732 So. 2d 994 (Ala. 1999)) and by appellate courts in Florida (see *Stacy David, Inc. v. Consuegra*, 845 So. 2d 303 (Fla. App. 2003)), Georgia (see *Results Oriented, Inc. v. Crawford*, 245 Ga. App. 432, 538 S.E.2d 73 (2000), *aff'd*, 273 Ga. 884, 548 S.E.2d 342 (2001)), Louisiana (see *Howell v. Cappaert Manufactured Housing, Inc.*, 819 So. 2d 461 (La. App. 2002)) and Michigan (see *Abela v. General Motors Corp.*, 257 Mich. App. 513, 669 N.W.2d 271 (2003)).

Various rationales are advanced in this latter group of decisions to uphold mandatory binding arbitration in the face of the Magnuson-Moss Warranty Act and its attendant rules and regulations. All are premised on the notion that the courts which have invalidated binding arbitration provisions under the Magnuson-Moss Warranty Act have misinterpreted the Act's legislative history and text.[5] Although the latter cases acknowledge that the decisions of the other courts are fully consistent

---

[5]*Stacy David, Inc. v. Consuegra*, 845 So. 2d 303 (2003), did not directly advance this rationale. It merely cited to *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002). Similarly, *Abela v. General Motors Corp.*, 257 Mich. App. 513, 669 N.W.2d 271 (2003), undertook no independent analysis. It simply invoked the decisions of the federal courts of appeals in *Walton v. Rose Mobile Homes, LLC*, 298 F.3d 470 (5th Cir. 2002), and *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002), which it felt obliged to follow. To the extent such an obligation existed, it was an obligation the courts of Michigan elected to assume as a matter of Michigan state law. The only federal court whose interpretation of federal law is controlling on state courts is the United States Supreme Court. Neither federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a lower federal court's interpretation. If a state

with the FTC's rules and regulations, they argue that the FTC's interpretation of the law is, itself, erroneous and should not be followed.

Gateway urges our court to adopt this reasoning and to reject the view taken by our appellate court and by the tribunals which have concluded that the Magnuson-Moss Warranty Act forbids warrantors from requiring consumers to forgo their judicial remedies in favor of binding arbitration. A majority of my colleagues has accepted this invitation. I do not.

The Federal Arbitration Act, which applies generally to transactions involving commerce, allows judicial access to be supplanted by arbitration. The legislative scheme created under the more recently enacted Magnuson-Moss Warranty Act, which pertains specifically to warranties on consumer products, does not. Although the Magnuson-Moss Warranty Act makes provision for alternative dispute resolution procedures, those procedures may operate only as a precondition to bringing suit. 15 U.S.C. § 2310(a)(3)(c) (1994). They may not be imposed as a substitute for legal action, as the FTC's regulations recognize.

Some have attempted to reconcile the two statutes by arguing that the informal dispute resolution procedures contemplated by the Magnuson-Moss Warranty Act are distinguishable from and do not include arbitrations. I

court follows a federal circuit court's interpretation of federal law, it does so only because it chooses to, not because it must. *Lockhart v. Fretwell*, 506 U.S. 364, 376, 122 L. Ed. 2d 180, 193, 113 S. Ct. 838, 846 (1993) (Thomas, J., concurring). Consistent with this principle, our court has expressly held that decisions of lower federal courts are not conclusive on the courts of Illinois except insofar as the decision of the lower federal court may become the law of the case. *People v. Kokoraleis*, 132 Ill. 2d 235, 293-94 (1989). See also *Bishop v. Burgard*, 198 Ill. 2d 495, 507 (2002); *Weiland v. Telectronics Pacing Systems, Inc.*, 188 Ill. 2d 415, 423 (1999).

have found nothing in the text or legislative histories of the statutes to support such an interpretation. To the contrary, it seems clear to me that the informal dispute settlement procedures referenced by the Magnuson-Moss Warranty Act were intended by Congress to include all mechanisms of redress other than court proceedings, including private arbitration. Current legal scholarship supports this view. A. Lamis, *The New Age of Artificial Legal Reasoning as Reflected in the Judicial Treatment of the Magnuson-Moss Act and the Federal Arbitration Act*, 15 Loy. Consumer L. Rev. 173 (2003).

To hold otherwise would contravene basic principles of statutory construction. If the Magnuson-Moss Warranty Act were read to permit binding arbitration in accordance with the Federal Arbitration Act, warrantors would have no reason to provide consumers with the option of pursuing any other type of dispute resolution mechanisms. Warrantors would always opt for binding arbitration because that mechanism would foreclose any subsequent access to the courts by consumers and defeat the consumers' concomitant right to obtain an award of their attorney fees from the courts if they prevailed (see 15 U.S.C. § 2310(d)(2) (1994)). As a result, the provisions in the Magnuson-Moss Warranty Act governing informal dispute resolution procedures would be rendered meaningless. That is fatal, for under federal law, as under the law of Illinois, the court has a duty to give effect, if possible, to every clause and word of a statute. Statutes are to be so construed that, if it can be prevented, no clause, sentence, or word is superfluous, void, or insignificant. *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 151 L. Ed. 2d 339, 350, 122 S. Ct. 441, 449 (2001), quoting *Duncan, Superintendent, Great Meadow Correctional Facility v. Walker*, 533 U.S. 167, 174, 150 L. Ed. 2d 251, 259, 121 S. Ct. 2120, 2125 (2001).

The claim has been made that rather than thwarting

the Magnuson-Moss Warranty Act, enforcement of binding arbitration provisions under the Federal Arbitration Act is actually consistent with the Magnuson-Moss Warranty Act because that statute provides that nothing therein "shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal law" (15 U.S.C. § 2311(b)(1) (1994)) and consumers, no less than corporations, should have the right to resort to binding arbitration if they so choose. I find this contention unpersuasive. There is no question that informal dispute resolution procedures, including arbitration, can benefit consumers by offering them the opportunity to pursue their claims in a manner that is usually cheaper than litigation, with simpler rules, less formality, and more flexible scheduling. See *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280, 130 L. Ed. 2d 753, 768, 115 S. Ct. 834, 842-43 (1995). That is why the Magnuson-Moss Warranty Act encourages warrantors to establish such procedures. See 15 U.S.C. § 2310(a)(1) (1994). Where arbitration is mandatory and binding, however, and access to courts is foreclosed, the benefits flow primarily to the warrantors. That is why the Magnuson-Moss Warranty Act makes recourse to informal dispute resolution procedures a precondition to litigation rather than a replacement for it.

That arbitration profits warrantors rather than consumers when it is made compulsory and binding is demonstrated by experience. If binding arbitration were advantageous to consumers, one would expect to find instances where warrantors were asking for judicial relief while consumers demanded arbitration. In fact, the reported decisions seem to be uniformly to the contrary. I have searched in vain for a single instance in the case law where the consumer is the party seeking to avoid litigation through arbitration. In every instance I have seen, the substitution of binding arbitration for judicial

remedies is a mode of recourse sought by warrantors, not their customers. Accordingly, adherence to the Magnuson-Moss Warranty Act and its opportunities for redress in the courts cannot, in any meaningful sense, be regarded as invalidating or restricting "any right or remedy of any consumer." Indeed, the notion that enforcement of binding arbitration is necessary to protect consumers, notwithstanding the Magnuson-Moss Warranty Act's provision for judicial remedies and statutory attorney fees, turns the Act on its head. It is the same as holding that portions of the Act must be nullified to give the statute effect. I cannot countenance such a construction.

By any reasonable measure, the Magnuson-Moss Warranty Act and the Federal Arbitration Act are in irreconcilable conflict. Because the Magnuson-Moss Warranty Act became law five decades after promulgation of the Federal Arbitration Act, we must presume that it was enacted in light of the Federal Arbitration Act. See *Parkerson v. Smith*, 817 So. 2d at 533. In construing federal statutes, courts follow the familiar principle that where statutes are in irreconcilable conflict, as the statutes here are, the more recently enacted law controls over an earlier and more general statute. See, *e.g., Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 949-50 (11th Cir. 2001); *Bolar v. Frank*, 938 F.2d 377, 379 (2d Cir. 1991). Because the statutes before us today cannot be reconciled and because the Magnuson-Moss Warranty Act deals more specifically with written warranties on consumer products, I agree with those courts which have held that the Magnuson-Moss Warranty Act supersedes the Federal Arbitration Act in cases seeking relief based on warranties encompassed by the Magnuson-Moss Warranty Act's provisions.

The regulations enacted by the FTC in accordance with the authority conferred on it by Congress are consistent with that view. As I wrote earlier in this dis-

sent, the FTC's regulations do not allow binding arbitration of disputes concerning written warranties or service contracts. Under those regulations, warrantors are prohibited from including clauses in contracts with consumers that would require consumers to submit their warranty disputes to binding arbitration. That, however, is precisely what Gateway attempted to do in the consolidated cases before us today.

I reject the notion that the FTC's regulations are not entitled to deference and should be ignored by our court in analyzing the validity of the binding arbitration clause in Gateway's warranties. Such an approach is inconsistent with federal law. The United States Supreme Court has expressly held that legislative regulations adopted by federal administrative agencies are given controlling weight unless they are arbitrary, capricious or manifestly contrary to the statute pursuant to which they were adopted. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 81 L. Ed. 2d 694, 703, 104 S. Ct. 2778, 2782 (1984). The regulations here do not fall within any of those exceptions.

Adherence to the FTC's regulations is further supported by the United States Supreme Court's precept that considerable weight should be accorded to executive department construction of a statutory scheme it is entrusted to administer. *Chevron*, 467 U.S. at 844, 81 L. Ed. 2d at 704, 104 S. Ct. at 2782. Such deference is particularly appropriate where, as in this case, the agency has interpreted the statutory scheme in a consistent fashion over a considerable period of time. *Barnhart v. Walton*, 535 U.S. 212, 220, 152 L. Ed. 2d 330, 340, 122 S. Ct. 1265, 1270 (2002).

I note, moreover, that unlike the intermediate federal appeals courts whose decisions have been cited by the majority, we are a state court. As such, our authority to reject federal law is more constrained. It is true that

state courts normally have jurisdiction to hear claims arising under both federal and state law unless that jurisdiction has been validly limited. It is also true, however, that the federal constitution requires the states to recognize federal law as paramount. *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477-78, 69 L. Ed. 2d 784, 791, 101 S. Ct. 2870, 2875 (1981).

I have no doubt that a state court has authority to declare that a federal statute or regulation violates the United States Constitution. I would even concede that a state court may hold that a federal regulation is invalid because it has not been properly enacted. Neither of those circumstances is present here, however. The regulations at issue in this case, which bar binding arbitration clauses in written warranties, are not claimed to violate the federal constitution, and no argument has been made that the FTC did not follow the proper procedures in adopting them. The majority declines to follow the regulations simply because it disagrees with them. That it may not do.

Properly promulgated agency regulations implementing federal statutes have the force and effect of federal law, which state courts are bound to follow. For a state court to override such regulations would violate the supremacy clause of the United States Constitution. *Boron Oil Co. v. Downie*, 873 F.2d 67, 71 (4th Cir. 1989). None of the state courts which have followed the decisions by the federal circuit courts of appeal in *Walton v. Rose Mobile Homes, LLC*, 298 F.3d 470 (5th Cir. 2002), and *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002), have recognized this limitation.

Arbitration provisions that violate federal statutory or regulatory provisions, as Gateway's do, are void and unenforceable. See, *e.g.*, *In re Conticommodity Services, Inc.*, No. H—86—4202 (N.D. Ill. May 8, 1987) (arbitration clause which violated regulations of the Commodi-

ties Futures Trading Commission was null and void, and the Federal Arbitration Act did not mandate its enforcement). The appellate court was therefore correct in upholding the circuit court's decisions to deny the motions filed by Gateway to dismiss the plaintiffs' respective complaints or to compel arbitration and stay the proceedings pending outcome of the arbitration.

Gateway argues, in the alternative, that even if its binding arbitration provisions are unenforceable with respect to plaintiffs' warranty claims, they can still be applied to require arbitration of plaintiffs' non-Warranty Act claims. This argument is untenable. Because the Magnuson-Moss Warranty Act prohibits inclusion of mandatory binding arbitration provisions in warranties on consumer products, those provisions should not have been in the warranties extended to plaintiffs by Gateway. Because they should not have been included in the warranties, they have no force or effect. We must treat them as if they do not exist. That is the consequence of finding them void and unenforceable. No principle of contract law permits us to excise the arbitration provisions from the warranties, where they are illegal, and restore them to the agreement in some other place in some other way for some other purpose.

A second, and equally fundamental, flaw in Gateway's argument is that it would require us to overlook the nature of plaintiffs' other claims. Although plaintiffs' complaints include counts alleging violation of Illinois' consumer fraud and deceptive business practices statute and, in one instance, common law fraud, those counts are all premised on the substantive provisions of the warranties issued by Gateway. The statutory consumer fraud counts, for example, are based on the proposition that Gateway's inclusion of the binding arbitration requirement in its warranties is a deceptive practice because under the Magnuson-Moss Warranty Act, war-

rantors are not, in fact, permitted to represent to consumers that the results of arbitration or other types of informal dispute resolution proceedings will be final and binding.

As with plaintiffs' other claims, the viability of these claims plainly turns on the underlying question of whether Gateway has violated its obligations under the Magnuson-Moss Warranty Act. In this sense, all of plaintiffs' claims are Warranty Act claims. Under the statutory and regulatory scheme adopted by Congress, plaintiffs have the right to litigate such claims in the courts.

For the foregoing reasons, I would affirm the judgment of the appellate court. I therefore respectfully dissent.

JUSTICE KILBRIDE joins in this dissent.