Fourth Division
September 7, 2006

Nos. 1-03-0253 & 1-03-0254 (Consolidated)

| | | |
|---|---|---|
| AMY GRAHAM and KENNETH ROYAL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | Cook County |
| | ) | |
| v. | ) | Nos.   02 M1 147304 |
| | ) |         02 M1 304967 |
| | ) | |
| HYUNDAI MOTOR AMERICA, | ) | Honorable |
| | ) | John Laurie, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE NEVILLE delivered the modified opinion of the court:

In these consolidated interlocutory appeals, plaintiffs, Amy Graham, Kenneth Royal and

Jeffrey Shoemaker[1], filed complaints against defendant, Hyundai Motor America (Hyundai), and

alleged that they were sold defective vehicles.  Hyundai filed motions to dismiss the plaintiffs'

complaints predicated on section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West

2002)), but the motions were denied.  However, the trial court granted Hyundai's request to certify

---

[1]After participating in the Cook County mandatory arbitration program, Hyundai and

Shoemaker accepted the arbitrator's decision and Shoemaker's case was dismissed.  This court

thereafter granted Hyundai's motion to sever and dismiss the Shoemaker appeal, leaving Graham

and Royal as the remaining appellees.

the following question:

> "Whether Hyundai's informal dispute settlement procedure established through [the] Better Business Bureau (BBB) Auto Line Program, complies with the applicable [Federal Trade Commission (FTC)] rules codified at 16 C.F.R. §703.1 et seq. thereby requiring plaintiff to first resort to Hyundai's procedure before commencing a civil action as required by [section 2310(a)(3)(C)(i) of the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (Act) (15 U.S.C. §2310(a)(3)(C)(i))]."

Hyundai sought leave to appeal to the appellate court, pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). The appellate court denied Hyundai's Supreme Court Rule 308 petition. 155 Ill. 2d R. 308. On April 28, 2003, Hyundai filed a petition for leave to appeal in the Illinois Supreme Court, pursuant to Supreme Court Rule 315. 177 Ill. 2d R. 315. The supreme court denied the motion for leave to appeal, but entered the following supervisory order:

> "In the exercise of this Court's supervisory authority, the Appellate Court, First District, is directed to vacate its order in Shoemaker v. Hyundai Motor America, Nos. 1-03-0252, 1-03-0253, 1-03-0254 cons., denying the petition for interlocutory appeal pursuant to Supreme Court Rule 308 and to answer the certified question." 205 Ill. 2d 647 (2003).

In compliance with the supreme court's supervisory order, we answer the certified question.

## BACKGROUND

1-03-0253 & 1-03-0254 (Consolidated)

The plaintiffs, Graham and Royal, each purchased a Hyundai vehicle in 2002 that they characterize as defective. The purchase of each vehicle came with an express written warranty to repair or replace parts "found to be defective in material or workmanship under normal use and maintenance." The express warranty provisions also provide for the buyer's participation in non-binding, alternative dispute resolution through the BBB Auto Line program. The warranty also provides that participation in the BBB Auto Line program must occur prior to pursuing court action. According to the warranty, "[i]f [a buyer] reject[s] the decision of the arbitrator [the buyer] may pursue other legal remedies under state or federal law."

Graham and Royal each filed a complaint in the circuit court of Cook County claiming: (1) breach of written warranty; (2) breach of the implied warranty of merchantability; and (3) revocation of the acceptance of the vehicles. The plaintiffs alleged in their individual complaints that they each purchased a defective Hyundai vehicle. The plaintiffs also alleged that Hyundai's authorized dealerships failed to repair the defects after a reasonable number of attempts. As a result of not having the defects in their Hyundais repaired, the plaintiffs attempted to revoke their acceptance of the vehicles, which Hyundai refused to honor.

Hyundai filed a section 2-619 motion to dismiss the plaintiffs' complaints because neither Graham nor Royal submitted his or her individual claim to the BBB Auto Line process in advance of filing suit in the circuit court. The trial court denied the plaintiffs' motions and certified the aforementioned question. This court denied Hyundai's application on March 24, 2003, but the supreme court issued a supervisory order that directed this court to answer the certified question.

ANALYSIS

1-03-0253 & 1-03-0254 (Consolidated)

The threshold question we must answer in this appeal is whether Hyundai's informal dispute settlement procedure complies with the FTC's rules codified in 16 C.F.R. §703 (2006). Hyundai argues that the trial court erred in denying its motion to dismiss the plaintiffs' complaints. Hyundai argues that its informal dispute resolution (IDR) procedure, established through the BBB Auto Line Program, facilitates the presuit resolution of consumer claims and implements the federal and Illinois policy favoring the settlement of claims. Hyundai also argues that Graham and Royal (plaintiffs, collectively) must first resort to the BBB Auto Line program before commencing a civil action. Accordingly, Hyundai argues that the trial court erred in denying its section 2-619 motion to dismiss. 735 ILCS 5/2-619 (West 2002). Hyundai also argues that the trial court erred in finding that Hyundai's IDR procedure fails to comply with the requirements of the FTC.

According to Hyundai, its IDR procedure fully complies with the FTC's rules. Hyundai argues that the BBB Auto Line is an annually audited program. According to an affidavit submitted by Alan L. Cohen, deputy general counsel of the Council of Better Business Bureaus, the BBB Auto Line is "an independently operated program of the Better Business Bureau system" established to provide car owners with an informal system under which to bring warranty complaints. Hyundai argues that it presented the results of annual outside audits of the BBB Auto Line program to the trial court. Hyundai maintains that the affidavit establishes compliance with the FTC rules. Hyundai argues that Graham and Royal failed to present evidence to rebut deputy general counsel Cohen's conclusion that the BBB Auto Line program complied with the FTC rules.

The plaintiffs argue that the trial court was correct in refusing to dismiss their complaints because Hyundai failed to demonstrate that its IDR procedure complied with the Act. The plaintiffs

also argue that they did not have to submit to Hyundai's IDR procedure before filing the lawsuit. The plaintiffs also argue that Hyundai failed to present sufficient evidence that its IDR procedure complied with the FTC's rules, specifically section 703 and all the subsections contained therein. 16 C.F.R. §703 (2006). The plaintiffs argue that the FTC rules are binding on this court and must be strictly construed. The plaintiffs also argue that the burden is on Hyundai to demonstrate compliance, not on the plaintiffs to demonstrate noncompliance, with the rules.

Plaintiffs also argue that the BBB Auto Line program limits the available remedies by excluding the potential for the recovery of consequential damages and attorney fees. Plaintiffs argue that the BBB Auto Line program is defective in that it does not consider the Act or the chief measure of damages for breach of warranty in Illinois, diminution in value. Plaintiffs further argue that Hyundai's IDR procedure does not comply with the disclosure requirements found in section 703.2. 16 C.F.R. §703.2 (2006). Specifically, plaintiffs argue the required information is not disclosed clearly and conspicuously on the face of the written warranty.

According to Hyundai, it is a misstatement of the record to argue a lack of adequate notice of the warranty. Hyundai argues that the plaintiffs have misinterpreted the first page of the text of the owner's manual as the first page of the warranty when that is merely an introductory page with general information and an overview of the manual.

In analyzing section 703, we must consider two things: (1) whether the warranty conspicuously disclosed the information required in section 703.2(b) (16 C.F.R. §703.2(b)(2006)); and (2) whether the written warranty mechanism complies with sections 703.3 through 703.8 of the rules. 16 C.F.R. §703.3 through 703.8 (2006). First, section 703.2 of the FTC's rules delineates the

duties of a warrantor and sets out the information that must be clearly and conspicuously disclosed on the face of the written warranty. 16 C.F.R. §703.2 (2006). The "face of the warranty" is defined differently by the FTC depending on how the warranty is written and provided to the consumer. 16 C.F.R. §703.1(h)(1), (h)(2) (2006). Section 703.1(h)(1) provides that "[i]f the warranty is a single sheet with printing on both sides of the sheet, or if the warranty is comprised of more than one sheet, [the written warranty must be clearly and conspicuously disclosed on] the page on which the warranty text begins." 16 C.F.R. §703.1(h)(1) (2006). Section 703.1(h)(2) provides that "[i]f the warranty is included as part of a longer document, such as a use and care manual, [the written warranty must be clearly and conspicuously disclosed on] the page in such document on which the warranty text begins." 16 C.F.R. §703.1(h)(2) (2006).

Section 703.2 (16 C.F.R. §703.2 (2006)) of the FTC's rules provides that a warrantor shall incorporate a mechanism into the terms of the written warranty that complies with sections 703.3 through 703.8 (16 C.F.R. §§703.03 through 703.8 (2006)). Section 703.2(b) provides that a warranty shall clearly and conspicuously disclose:

"(1) A statement of the availability of the informal dispute settlement mechanism;

(2) The name and address of the Mechanism, or the name and a telephone number of the Mechanism which consumers may use without charge;

(3) A statement of any requirement that the consumer resort to the Mechanism before exercising rights or seeking remedies created by Title I of the

Act; together with the disclosure that if a consumer chooses to seek redress by pursuing rights and remedies not created by Title I of the Act, resort to the Mechanism would not be required by any provision of the Act; and

(4) A statement, if applicable, indicating where further information on the Mechanism can be found in materials accompanying the product, as provided in §703.2(c) of this section." 16 C.F.R. §703.2(b) (2006).

Hyundai's owner's manual provides an explanation of the availability of the alternative dispute resolution mechanism through the BBB Auto Line program. This information is found in section 5 of the Hyundai New Vehicle Limited Warranty at page 14, the first page of text of the warranty section. That section of the manual instructs consumers to refer to the consumer information section of the manual for an explanation of the steps to be followed in the event of a warranty dispute. Section 5 of the manual also identifies BBB Auto Line as the alternative dispute program applicable to Hyundai car owners. The manual provides a contact address and telephone number. Additionally, the manual provides that the BBB Auto Line program must be used prior to filing a court action. We find that the information provided by Hyundai to its buyers complies with the requirements found in sections 703.2(b)(1) through (b)(4) of the FTC's rules. 16 C.F.R. §§703.2(b)(1) through (b)(4) (2006).

Second, section 703.2 of the FTC's rules provides that a warrantor shall not incorporate into the terms of a written warranty a mechanism that fails to comply with the requirements contained in sections 703.3 through 703.8 of the rules. 16 C.F.R. §703.3

through 703.8 (2006). Section 703.3 of the FTC's rules provides minimum requirements for setting up the organization of the mechanism, including funding, staffing and insulation for the members and the staff from the warrantor and the sponsor. 16 C.F.R. §703.3 (2006). Section 703.3 of the rules also provides that "[t]he Mechanism shall impose any other reasonable requirements necessary to ensure that the members and staff act fairly and expeditiously in each dispute." 16 C.F.R. §703.3(c)(2006).

Section 703.4 of the FTC's rules provides minimum requirements for the qualification of the members of the mechanism. 16 C.F.R. §703.4 (2006). When one or two members are deciding a dispute, section 703.4 provides that none of the members "shall be persons having no direct involvement in the manufacture, distribution, sale or service of any product." 16 C.F.R. §703.4(b)(2006). If the dispute is being decided by more than two members, at least two-thirds of the members must have "no direct involvement in the manufacture, distribution, sale or service of any product." 16 C.F.R. §703.4(b)(2006).

Section 703.5 of the FTC's rules provides instructions for the operation of the mechanism. 16 C.F.R. §703.5 (2006). Section 703.5 provides that "[t]he Mechanism shall establish written operating procedures which shall include at least those items specified in [section 703.5(b) through (j)]." 16 C.F.R. §703.5 (2006). Those sections provide for: (1) notice of the dispute to the warrantor and the consumer (16 C.F.R. §703.5(b)(2006)); (2) a mechanism for the investigation, gathering and organization of information necessary for a fair and expeditious decision in each dispute (16 C.F.R. §703.5(c)(2006)); (3) the rendering

of a decision within 40 days of the notification of the dispute (16 C.F.R. §703.5(d)(2006)); (4) an exception to the 40 day rule for situations where the consumer causes a delay or has failed to attempt to seek redress from the warrantor (16 C.F.R. §703.5(e)(2006)); (5) rules whereby a party to the dispute may make an oral presentation (16 C.F.R. §703.5(f)(2006)); (6) a statement informing the consumer (a) of the legal remedies available if the consumer is dissatisfied with the decision, (b) that the decision is deemed admissible in evidence, and (c) that the consumer may obtain, at reasonable cost, copies of all mechanism records relating to the dispute (16 C.F.R. §703.5(g)(2006)); (6) instructions that the mechanism shall ascertain from the consumer whether performance has occurred (16 C.F.R. §703.5(h)(2006)); (7) a statement to the consumer that he or she must utilize the mechanism before filing an action in the circuit court (16 C.F.R. §703.5(I)(2006)); and (8) a statement informing the consumer that the decisions of the mechanism are not legally binding on any person (16 C.F.R. §703.5(j)(2006)).

Section 703.6 of the FTC's rules provides minimum requirements for record keeping by the mechanism. 16 C.F.R. §703.6 (2006). Finally, section 703.7 of the FTC's rules provides that "[t]he Mechanism shall have an audit conducted at least annually, to determine whether the Mechanism and its implementation are in compliance with this part." 16 C.F.R. §703.7 (2006).

Hyundai argues that the BBB Auto Line program is subjected to such an audit. In support of that argument, Hyundai provided an affidavit and supporting documentation from deputy general counsel Cohen of the Council of Better Business Bureaus. According to

deputy general counsel Cohen, the BBB Auto Line has been annually audited since 1986 by Morrison & Company, an independent third party. Cohen avers in his affidavit that every audit since 1986 has confirmed that the BBB Auto Line program has been in compliance with the provisions of section 703. 16 C.F.R. §703 (2006). Morrison & Company audited the program and concluded in its audit that, "[i]n the main, the program uses efficiently and professionally-managed Informal Dispute Resolution Procedures which are in compliance with all pertinent federal and state regulations." We note that Hyundai's affidavit was not controverted with a counteraffidavit and it was not challenged in the circuit court with a motion to strike. "[W]hen the facts in an affidavit are uncontradicted, 'they must be taken as true notwithstanding the existence of contrary unsupported allegations.' " Webb v. Mount Sinai Hospital & Medical Center of Chicago, Inc., 347 Ill. App. 3d 817, 826 (2004), quoting Flannery v. Lin, 176 Ill. App. 3d 652, 658 (1988).

The affidavit and the audit establish that Hyundai's BBB Auto Line program is a nationwide program that is in compliance with the FTC's rules. The plaintiffs have failed to present any evidence to rebut Hyundai's evidence. Therefore, we find that Hyundai's IDR procedure complies with the FTC's rules.

Next, we must determine whether the plaintiffs are required to resort to Hyundai's IDR procedure before commencing a civil action. Both the plaintiffs and Hyundai have cited Borowiec v. Gateway 2000, Inc., 331 Ill. App. 3d 842 (2002). During the pendency of this case, the Illinois Supreme Court rendered its opinion in Borowiec. See Borowiec v. Gateway 2000, Inc., 209 Ill. 2d 376 (2004) (Borowiec II). In Borowiec II, the supreme court

extensively discussed the nature of informal dispute resolution under the Act:

"[T]he Magnuson-Moss Act provides for the establishment of informal dispute settlement mechanisms, and authorizes the Federal Trade Commission (FTC) to prescribe rules setting forth the minimum requirements for the procedures. 15 U.S.C. §2310(a) (1994). If a warrantor establishes an informal dispute settlement procedure which complies with the requirements of the FTC rules, and the warrantor incorporates in a written warranty a requirement that the consumer resort to such procedure, the consumer may not commence a civil action unless he initially resorts to the procedure. 15 U.S.C. §2310(a)(3) (1994). * * * The Magnuson-Moss Act nowhere defines the terms 'informal dispute settlement procedures' and 'informal dispute settlement mechanisms.'

In enforcing the Magnuson-Moss Act, the FTC has determined that decisions of an informal dispute settlement mechanism 'shall not be legally binding on any person' (16 C.F.R. §703.5(j) (2003)) and has defined the term 'mechanism' broadly to include binding arbitration. 40 Fed. Reg. 60167, 60210, 60211, 60218 (1975)." Borowiec II, 209 Ill. 2d at 387.

Despite the evidence presented, the trial court was "not totally satisfied [Hyundai's program] meets the federal requirements * * * that [the] damages that would be received, including attorneys' fees and other things, would be the same under this program that a person would * * *have available to them under the federal law." In light of the supreme

court's ruling in Borowiec II, we find that the trial court was in error. In Borowiec II, quoting from Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., our supreme court found that " ' "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." ' " Borowiec II, 209 Ill. 2d at 390, quoting Walton v. Rose Mobile Homes LLC, 298 F. 3d 470, 476 (5th Cir. 2005), quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U. S. 614, 628, 87 L. Ed. 2d 444, 456, 105 S. Ct. 3346, 3354 (1985).

According to Borowiec II, under the Act, if the warrantor establishes an IDR procedure that complies with the applicable rules, and we have found that Hyundai's IDR procedure complies with the FTC's rules, then the consumer must utilize that procedure before filing a civil action. 15 U.S.C. §2310(a)(3)(c)(i)(2000). After using the IDR procedure, the Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief-- (A) in any court of competent jurisdiction in any State or the District of Columbia;  or (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection." 15 U.S.C.§2310(d)(1)(A), (d)(1)(B)(2000).

According to Hyundai's owner's manual, which delineates the IDR procedure and provides that it is non-binding on the consumer, the remedies available under state and federal law that are not prescribed remedies in the IDR procedure become available during

the IDR procedure if agreed to by the parties, or after the IDR procedure should the consumer be dissatisfied with the arbitrated settlement and choose to proceed to court. The BBB Auto Line Rules provide that an arbitrator may award any remedies available under the company's program summary or additional remedies that are agreed to by the parties.[2] This is consistent with section 703.5(d)(1) of the FTC's rules, which provides that "[a] decision shall include any remedies appropriate under the circumstances, including repair, replacement, refund, reimbursement for expenses, compensation for damages, and <u>any other remedies available under the written warranty</u> or the Act (or rules thereunder)." (Emphasis added.) 16 C.F.R. §703.5(d)(1)(2006). As to claims for attorney fees, the Act contemplates that they would only be available to the prevailing party in the discretion of the trial court. 15 U.S.C. §2310(d)(2)(2000). The fact that they are generally not available to participants in the BBB Auto Line program is not inconsistent with the Act, especially considering the fact that Hyundai's IDR procedure is non-binding. Therefore, under the Act, we hold that after using the IDR procedure, a consumer who is dissatisfied with the relief he received may still

---

[2] In the BBB Auto Line Rules, there is a section on Available Remedies which provides: "[t]he arbitrator may award any remedies available under the company's <u>Program Summary</u>. Additional remedies may be awarded only if agreed to by the parties."

recover costs, expenses and attorney fees, if found to be appropriate in a state or federal court.  15 U.S.C. §2310(d)(2)(2000).

Section 2310 of the Act provides that the express congressional policy is "to encourage  warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms."   15 U.S.C. §2310(a)(1)(2000).  In order to implement the informal dispute resolution mechanism called for under the Act, Congress has empowered the Federal Trade Commission to enact rules defining the necessary procedures.  See 16 C.F.R. §703.1 et seq. (2006).  The Borowiec II court held that the Magnuson-Moss Act does not bar arbitration of a consumer's claims under the Act.  Borowiec II, 209 Ill. 2d at 397.

Plaintiffs have filed a motion and cited Razor v. Hyundai Motor America, No. 98813 (June 29, 2006), as additional authority.  Plaintiffs maintain that the BBB Auto Line program's remedies are inconsistent with the Act and Illinois law (1) because the Act allows for consequential damages, and (2) because the measure of damages under the Act is diminution in value – the difference between the value as warranted and the value as delivered.  The plaintiffs maintain that the Razor court found that the disclaimer of consequential damages in the plaintiffs' contract with Hyundai was unconscionable and that the primary measure of damages under the Act is diminished value.  Razor does not make the disclaimer of consequential damages per se unconscionable but only unconscionable in that case.  Razor, slip op. at 22.  Therefore, we are not required to make the disclaimer of damages unconscionable in this case.  Razor, slip op. at 22.

Graham and Royal also direct this court to <u>Muller v. Winnebago Industries, Inc.</u>, 318 F. Supp. 844 (2004). Graham and Royal argue that this case provides a basis for rejecting Hyundai's arguments and affirming the trial court's decision. We disagree and note that we are not required to follow federal cases interpreting Arizona law. <u>Bowman v. American River Transportation Co.</u>, 217 Ill. 2d 75, 91-92 (2005); <u>Lamar Whiteco Outdoor Corporation v. City of West Chicago</u>, 355 Ill. App. 3d 352, 360 (2005). The <u>Muller</u> court concluded that the Auto Line program failed to meet the substantive requirements of section 703 of the FTC rules because "[Applicable Arizona law] requires IDR mechanisms to allow all remedies available under state law, this exclusion renders Auto Line * * * noncompliant." <u>Muller</u>, 318 F. Supp. at 848-49 (the Auto Line program fails to meet the substantive requirements of section 703, at least with respect to disputes in Arizona).

We find the <u>Muller</u> court's interpretation of section 703 to be inconsistent with the language in section 703.5(d)(1) of the FTC rules. Section 703.5(d)(1) provides that an IDR mechanism must result in a decision that "includes any remedies available under the circumstances * * * and "any other remedies available under the written warranty <u>or</u> the Act (or rules thereunder)." 16 C.F.R. §703.5(d)(1) (2006) (Emphasis added). We note that section 703 uses disjunctive rather than conjunctive language. We interpret the language in section 703 to require an IDR mechanism that results in a decision that provides for one of two remedies: (1) it must provide "any remedies available under the circumstances" and (2) it must provide for "any other remedies available under the written warranty" <u>or</u> it must provide for any remedies available under the Act (or rules thereunder). 16 C.F.R.

§703.5(d)(1) (2006). Accordingly, after the arbitrator provides the consumer with the remedies that are available, the arbitrator may then look for remedies available under the written warranty or under the Act or rules. 16 C.F.R. §703.5(d)(1).

In Muller, "[t]he parties agree[d] that [the] appropriate remedies [would be] determined with reference to state law." Muller, 318 F. Supp. at 849. In this case, the parties made no such agreement: the parties did not bind themselves to the remedies available under state law. Instead, in the Hyundai, Royal and Graham agreements, the parties contractually limited their rights and agreed to the remedies in Hyundai's written warranty, including the fact that disputes would be resolved in a non-binding arbitral forum. The Hyundai, Royal and Graham agreements were permissible under section 703 because decisions can be based on remedies in the written warranty or codified in the Act (or rules thereunder). 16 C.F.R. §703.5(d)(1) (2006). Therefore, we hold that the remedies provided in the BBB Auto Line IDR mechanism will result in a decision that complies with the requirements in section 703 of the FTC Rules. 16 C.F.R. §703 (2006).

We find the fact that the BBB Auto Line program excludes the recovery of consequential damages and does not use diminution of value as the measure of damages does not prevent the IDR mechanism from complying with the regulations for two reasons. First, Hyundai's owner's manual makes it clear that the remedies available under law, including consequential damages and the use of diminution of value as the measure of damages, which are not available as part of Hyundai's IDR program, become available (a) if agreed to by the parties, or (b) if the consumer is dissatisfied with the arbitrated settlement, he may proceed to

court.  Second, because Hyundai's owner's manual makes it clear that the IDR procedure is non-binding on the consumer.  Therefore, we hold that the Razor holding does not void Hyundai's IDR program because the IDR program is non-binding and the consumer retains the option of going to court if he does not like the settlement.

## CONCLUSION

In light of the foregoing, we answer the certified question posed by the circuit court as follows: (1) Hyundai's IDR procedure, established through the Better Business Bureau Auto Line program, complies with the applicable FTC's rules; and (2) following Borrowiec II, Graham and Royal were required to first resort to Hyundai's IDR procedure before commencing a civil action.  Borrowiec II, 209 Ill. 2d at 387.

Certified question answered.

GALLAGHER, J., and O'MARA FROSSARD, J., concur.