No. 2--07--0448    Filed:  9-11-08

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| EDMUND JONES, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 06--AR--261 |
| | ) | |
| NISSAN NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendant-Appellee | ) | Honorable |
| | ) | Stephen Sullivan and |
| (Nissan Motor Acceptance Corporation, | ) | F. Keith Brown, |
| Defendant). | ) | Judges, Presiding. |

_____

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

Plaintiff, Edmund Jones, appeals from three orders of the circuit court of Kane County dismissing his claims in his amended complaint against defendant, Nissan North America, Inc., for breach of express (count I) and implied (count II) warranties under the Magnuson-Moss Warranty-- Federal Trade Commission Improvement Act (Magnuson-Moss Act, Magnuson-Moss, or Act) (15 U.S.C. §2301 et seq. (2000)).  We reverse and remand for further proceedings.

BACKGROUND

In 2005, plaintiff purchased a new Nissan Armada from St. Charles Nissan.  The vehicle was manufactured by defendant, which provided a written 3-year or 36,000-mile limited warranty. Within the first week that plaintiff had it, the vehicle allegedly began to demonstrate various

problems, including an inoperable seat belt and a defective braking system, gas gauge, mirror, and trim. The warranty contained the following provision:

"Nissan makes available to you, and you are specifically required by Federal Law to use BBB AUTO LINE [(800) 955-5100] before exercising rights or seeking remedies under the Federal Magnuson-Moss Warranty Act, 15 U.S.C. §2301, et seq. You are not required to first use BBB AUTO LINE if you seek remedies not created by Title I of that Federal law, but may be required to do so under state law, including your state lemon law. Please refer to pp. 2-3 of this booklet and the "Supplement to 2005 Nissan Warranty Information Booklet & 2005 Nissan Owner's Manual for additional information."

Pages two and three of the warranty provided a telephone number and address for the BBB Auto Line program (Auto Line), as well as the following pertinent information:

"In the event that you believe Nissan has been unable to satisfactorily address the issue with your vehicle, a special automotive complaint resolution program called BBB AUTO LINE is available to you. The BBB AUTO LINE program is independently operated by the Council of Better Business Bureaus, Inc. (BBB).

The BBB AUTO LINE program consists of two parts, mediation and arbitration. The BBB will attempt to assist you to resolve the problem during mediation. If a satisfactory resolution has not been achieved during mediation, you will have the opportunity to personally present your case before an impartial arbitrator or three-person panel. The arbitrator(s) will make a decision after the arbitration hearing.

The BBB will, in most cases, send you a final decision within forty (40) days (plus 7 if you have not contacted the proper person from the dealership or Nissan) unless you delay

the process. If you accept the decision, it will be legally binding on you and Nissan. If you do not accept the decision, it will not be legally binding on you or Nissan. (However, in some states, if the decision is not accepted, it may be introduced either by you or by Nissan, as evidence in any potentially related court action.)

* * *

Nissan vehicles less than three years old from date of original delivery with fewer than 36,000 miles, are eligible for the BBB AUTO LINE program."

On September 23, 2005, after approximately 12 allegedly unsuccessful repair attempts, plaintiff applied to Auto Line pursuant to the warranty. Plaintiff opened a claim by submitting a customer claim form, in which he requested a refund and payment of attorney fees. In a letter dated September 26, 2005, plaintiff's attorney notified Auto Line that, "[i]f requested, we will honor your request for an inspection by the arbitrator at the closest BBB inspection location to our client on the hearing date." Plaintiff also requested a decision based only on document review.

The Auto Line Program Summary, which plaintiff received on September 23, 2005, contained the following provision:

"OTHER IMPORTANT INFORMATION

#   You must own or lease the vehicle throughout the entire arbitration process.

#   If you file suit against Nissan prior to the completion of the arbitration process, Nissan will not be obligated to continue with the arbitration."

Auto Line allegedly sent a notice of inspection to plaintiff's attorney on October 14. From the record, it is not clear whether plaintiff received it, and plaintiff does not address the notice on appeal. The notice[1] contains the following instructions:

"1. Notify your Dispute Resolution Specialist at once if you cannot make the vehicle available for the inspection. The BBB reserves the right to make the final determination as to the date and time of the inspection.

2. Current vehicle registration and insurance is required for all test-drives.

3. If the vehicle is inoperable, please contact your Dispute Resolution Case Specialist

immediately.

4. Refer to How BBB AUTO LINE Works for more detailed information on the inspection process."

A separate document, which referenced the notice of inspection,[2] provides that "[p]er Rule 9, if the customer fails to appear for the scheduled inspection, the case will be closed and a decision will not be rendered." The record contains no information as to whether plaintiff received this document.

---

[1] A copy of the notice appears in the record as an attachment to defendant's reply memorandum in support of its May 3, 2006, motion to dismiss, which was filed pursuant to section 2--619 of the Code of Civil Procedure (Code) (735 ILCS 5/2--619 (West 2006)).

[2] This document also appears in the record as an attachment to defendant's reply memorandum.

On October 26, 2005, plaintiff learned that Auto Line had closed his claim because he failed to present the vehicle for inspection on October 21. Plaintiff requested a new inspection date on November 9, 2005. Auto Line did not respond.

On November 28, 2005, plaintiff brought suit against defendant pursuant to Magnuson-Moss. The vehicle was repossessed on March 10, 2006. On May 26, 2006, plaintiff filed an amended complaint, which added a claim (count III) against Nissan Motor Acceptance Corporation (NMAC), pursuant to section 433.2 of Title 16 of the Federal Trade Commission (FTC) regulations (16 C.F.R. §433.2 (2002)). NMAC is not a party and count III is not at issue in this appeal.

On May 3, 2006, defendant filed a motion to dismiss plaintiff's complaint, pursuant to section 2--619 of the Code. Defendant argued that plaintiff was required to exhaust defendant's informal dispute settlement procedure as a prerequisite to filing suit. Plaintiff responded that he satisfied the requirements of Magnuson-Moss because (1) he tried to reschedule the missed vehicle inspection in an effort to complete the informal dispute settlement procedure, and (2) he waited until after the 40 days in which Auto Line was required to render a decision pursuant to section 703.5(d)(1) of Title 16 of the FTC regulations (16 C.F.R. §703.5(d) (2002)) before he filed suit under Magnuson-Moss. In defendant's reply in support of its motion to dismiss, defendant also contended that plaintiff was required to use the Auto Line program in "good faith."

On July 10, 2006, the trial court granted defendant's section 2--619 motion and dismissed plaintiff's amended complaint without prejudice. On September 14, 2006, in response to plaintiff's submission of a second claim, Auto Line informed plaintiff that he was not eligible for defendant's informal dispute settlement procedure because he no longer owned the vehicle. Plaintiff then filed a motion to reinstate his amended complaint, which the trial court denied on November 15, 2006.

The trial court also denied plaintiff's motion to reconsider on March 8, 2007. However, the trial court granted plaintiff's motion for a Rule 304(a) (210 Ill. 2d R. 304(a)) finding on its orders of July 10, 2006, November 15, 2006, and March 8, 2007, and plaintiff timely appealed.

ANALYSIS

Although he presents several arguments on appeal, plaintiff's essential contention is that failure to meet the Auto Line eligibility requirements cannot foreclose his statutory right to file a civil action where plaintiff "initially resorted" to Auto Line before filing a civil action pursuant to Magnuson-Moss. Defendant responds that plaintiff is precluded from filing a claim under Magnuson-Moss because he failed to use Auto Line in good faith. With regard to the trial court's order of July 10, 2006, defendant contends that the trial court did not err in finding that plaintiff failed to comply with Auto Line's requirements because plaintiff offered no evidence explaining why he failed to produce the vehicle for inspection and thus did not use Auto Line in good faith. Defendant also contends that plaintiff's second Auto Line claim was not submitted in good faith because he no longer owned the vehicle at the time he submitted the claim and, thus, the trial court's orders of November 15, 2006, and March 8, 2007, should be affirmed.

We first comment on the trial court's orders of July 10, 2006, and November 15, 2006. The July 10, 2006, order states:

"This matter coming on for hearing on Defendant's motion to dismiss under 735 ILCS 5/2--619, and the court having heard argument, and being fully advised, FINDS AS FOLLOWS:

(1) Plaintiff, having failed to comply with Nissan's BBB Auto Line program before seeking relief in this court under the Magnuson-Moss Warranty Act, is not

entitled to proceed with this action.

(2) The complaint herein should be dismissed until Plaintiff complies as aforesaid.

IT IS ORDERED that the complaint filed herein is hereby dismissed."

In this order, the trial court finds that plaintiff's complaint should be dismissed "until Plaintiff complies as aforesaid." (Emphasis added.) The judgment line then states that "the complaint filed herein is hereby dismissed." Although there is no question that pursuant to this order the trial court granted defendant's section 2--619 motion and dismissed plaintiff's complaint without prejudice, the order is problematic for two reasons. First, although it purportedly dismissed plaintiff's complaint, at the time of this order, plaintiff had filed an amended complaint, which included an additional claim against an additional party, NMAC. Our review of the record does not indicate that NMAC joined defendant's motion to dismiss. Neither the order nor defendant's motion to dismiss references plaintiff's allegations against NMAC. Moreover, in the April 4, 2007, order granting plaintiff's motion for a Rule 304(a) finding, the trial court granted NMAC 30 days in which to answer or otherwise plead to plaintiff's amended complaint. Accordingly, the July 10, 2006, order appears to dismiss only counts I and II, not plaintiff's entire amended complaint.

The second problem with the July 10, 2006, order is its finding that the complaint is dismissed "until Plaintiff complies as aforesaid," followed by an order of dismissal. This confusing language effectively dismissed counts I and II of plaintiff's amended complaint without prejudice, but provided no guidance as to what should happen if plaintiff successfully complied with the Auto Line requirements. After he filed a second claim and was informed by Auto Line that he was not

eligible to participate in the informal dispute settlement procedure, plaintiff filed a "motion to reinstate" his complaint. The trial court denied that motion on November 15, 2006:

"1. This matter comes before the court upon Plaintiff's Motion to Reinstate and Defendant's Motion to Dismiss Pursuant to 735 ILCS § [sic] 5/2--619.

2. Nissan North America Inc.'s limited warranty states that a consumer must use the BBB Auto Line before exercising rights or seeking relief under the Magnuson-Moss Warranty Act.

3. This court finds that Plaintiff has failed to comply with the BBB Auto Line claim because the Plaintiff failed to meet the eligibility requirements to submit a claim due to the fact that he did not at the time of the arbitration process own or lease the vehicle which is the subject of this law suit. See BBB Auto Line Program Summary, Page 3. Since plaintiff is no longer eligible to file a claim under Nissan North America Inc.'s BBB Auto Line Program, it is now a legal impossibility for him to file suit under the Magnuson-Moss Warranty Act.

4. Therefore Plaintiff's motion to reinstate is denied."

The November 15, 2006, order is also confusing in that it refers to defendant's section 2--619 motion to dismiss, despite the fact that plaintiff's complaint was dismissed on July 10, 2006. Seeming to recognize this problem, the trial court does not enter a final order of dismissal pursuant to defendant's section 2--619 motion but, instead, denies plaintiff's motion to reinstate. Technically, this leaves the parties in limbo, as counts I and II of plaintiff's amended complaint were dismissed without prejudice on July 10, 2006, but, on November 15, 2006, the trial court found it to be "a legal impossibility for [plaintiff] to file suit under the Magnuson-Moss Warranty Act." Thus, although the November 15, 2006, order ostensibly denies plaintiff's motion to reinstate, the effect is to supersede and finalize

the July 10, 2006, interlocutory order of dismissal. We therefore construe the November 15, 2006, order as a final order dismissing counts I and II of plaintiff's amended complaint with prejudice, and we will not review the superseded July 10, 2006, order.

## I. Standard of Review

We first note that the standard of review for a section 2--619 motion is de novo. Borowiec v. Gateway 2000, Inc., 209 Ill. 2d 376, 383 (2004). Moreover, "[w]here a party's motion for reconsideration merely asks the trial court to reexamine its earlier application of existing law," this court's review is also de novo. Swiatek v. Azran, 359 Ill. App. 3d 500, 503 (2005). Defendant argues that, because the trial court dismissed plaintiff's Magnuson-Moss claims due to plaintiff's failure to comply with Auto Line's eligibility requirements, this court should review that dismissal for abuse of discretion. However, the trial court's November 15, 2006, finding that noncompliance with Auto Line's eligibility requirements can bar plaintiff from filing suit under Magnuson-Moss is a determination of law, not a factual finding. Where the question presented is one of law, our review is de novo. Woods v. Cole, 181 Ill. 2d 512, 516 (1998). Plaintiff's motion to reconsider asked the trial court to reexamine its earlier application of existing law. Thus, de novo review is appropriate for both the November 15, 2006, and the March 8, 2007, orders.

## II. Merits

Turning to the merits, we first note that the Magnuson-Moss Act, which was enacted in 1975 to "improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products" (15 U.S.C. §2302(a) (2000)), provides a statutory private right of action for consumers in state or federal court when a supplier, warrantor, or service contractor violates the provisions of the Act. Borowiec, 209 Ill. 2d at 386. In the Act,

Congress expresses "its policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 U.S.C. §2310(a)(1) (2000). To that end, Congress mandates that, if a warrantor establishes a mechanism that complies with statutory requirements, including the FTC's rules, consumers are required to "initially resort" to a warrantor's informal dispute program prior to filing suit under Magnuson-Moss. 15 U.S.C. §2310(a)(3)(A), (a)(3)(C)(i) (2000); Borowiec, 209 Ill. 2d at 387. If a warrantor has established an informal dispute settlement procedure that complies with all applicable rules, "the consumer must utilize that procedure before filing a civil action." Graham v. Hyundai Motor America, 367 Ill. App. 3d 617, 625 (2006).

On appeal, plaintiff argues that the phrase "initially resorts" should be interpreted to mean that a consumer is required to utilize Auto Line only as a beginning step and that the program is not meant to bar a consumer's access to court. Plaintiff asserts that he initially resorted to the program because (1) he submitted a completed customer claim form, including all necessary documentation, and requested a decision based only on document review; (2) after receiving notification from Auto Line that his claim had been closed, plaintiff requested a new vehicle inspection date; (3) Auto Line did not respond to this request; and (4) plaintiff waited to file suit until after the 40-day period in which Auto Line was required to render a decision. Plaintiff further asserts that he acted in good faith, per the provisions of the Uniform Commercial Code (UCC) (810 ILCS 5/1--101 et seq. (West 2006)). In response, defendant contends that the only issue "is whether plaintiff 'used' [Auto Line] in 'good faith.' " However, eligibility for a warrantor's informal dispute settlement procedure is not subject to the UCC's good-faith requirement, which relates only to the performance or enforcement of contracts and duties. See 810 ILCS 5/1--203 (West 2006). Eligibility requirements for an informal dispute resolution program, viewed in isolation, implicate neither performance nor

enforcement, particularly given the fact that such a program is the neutral third party charged with mediating and arbitrating disputes between a warrantor and the consumer. The question of plaintiff's good faith therefore has no bearing on the trial court's orders of November 15, 2006, and March 8, 2007, which preclude plaintiff from seeking relief under Magnuson-Moss because he is ineligible to file a claim with Auto Line because he no longer possesses the warranted vehicle. Accordingly, the only question we must decide in reviewing those orders is whether the trial court erred in ruling that plaintiff's right to file a civil action pursuant to Magnuson-Moss can be foreclosed based on his ineligibility to file a claim with Auto Line.

### A. Statutory Construction

To answer that question, we turn to the Magnuson-Moss Act. In construing a federal statute, " 'we must look to the Federal decisions for its interpretation.' " U.S. Bank National Ass'n v. Clark, 216 Ill. 2d 334, 352 (2005), quoting Boyer v. Atchison, Topeka & Santa Fe Ry. Co., 38 Ill. 2d 31, 34 (1967). The parties have not cited and our research has uncovered no federal cases construing Magnuson-Moss with regard to the issue presented; the most analogous cases arise in the context of the Pennsylvania Automobile Lemon Law (73 Pa. Stat. Ann. §1951 et seq. (West 1993)), which appears to be identical or very similar to Magnuson-Moss. See Wurtz v. American Honda Motor Co., 960 F. Supp. 68 (E.D. Penn. 1997). However, construction of a state law that mirrors or closely follows a federal law does not equate with construction of that federal law itself, as the respective legislatures may well have had entirely different intents. Because no federal courts have yet answered the question at issue in the context of Magnuson-Moss, we turn to traditional principles of statutory construction.

"[T]he starting point for interpreting a statute is the language of the statute itself." Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 64 L. Ed. 2d 766, 772, 100 S. Ct.

2051, 2056 (1980); see also <u>Clark</u>, 216 Ill. 2d at 346 ("In construing a statute, the most fundamental rule is to give effect to the legislature's intent, and the best evidence of that intent is the statutory language"). Section 2310 of the Magnuson-Moss Act, entitled "Remedies in consumer disputes," provides in relevant part:

"(a) Informal dispute settlement procedures; establishment; rules setting forth minimum requirements; effect of compliance by warrantor; review of informal procedures or implementation by Commission; application to existing informal procedures

(1) Congress hereby declares it to be its policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms.

(2) The [Federal Trade] Commission shall prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of this chapter applies. Such rules shall provide for participation in such procedure by independent or governmental entities.

(3) One or more warrantors may establish an informal dispute settlement procedure which meets the requirements of the Commission's rules under paragraph (2). If--

(A) a warrantor establishes such a procedure,

(B) such procedure, and its implementation, meets the requirements of such rules, and

(C) he incorporates in a written warranty a requirement that the consumer resort to such procedure before pursuing any legal remedy under this section respecting such warranty,

then (i) the consumer may not commence a civil action *** under subsection (d) of this section unless he initially resorts to such procedure[.]" 15 U.S.C. §2310(a) (2000).

In reviewing the trial court's orders of November 15, 2006, and March 8, 2007, we consider only whether plaintiff's right to file a civil action pursuant to Magnuson-Moss may be foreclosed based on his ineligibility to file a claim with Auto Line, where such ineligibility arises because plaintiff no longer possessed the vehicle. The plain language of the statute does not address this question. Where resolution of a question of federal law turns on a statute and the intention of Congress, and the statutory language is unclear, courts should examine the legislative history. Blum v. Stenson, 465 U.S. 886, 896, 79 L. Ed. 2d 891, 900, 104 S. Ct. 1541, 1548 (1984); see also Stroger v. Regional Transportation Authority, 201 Ill. 2d 508, 524 (2002) ("Where the meaning of a statute is unclear from a reading of its language, courts may look beyond the language of the statute and consider the purpose of the law, the evils it was intended to remedy, and the legislative history behind it"). We therefore turn to the legislative history.

The legislative history of Magnuson-Moss indicates that Congress did not intend eligibility requirements for a warrantor's informal dispute settlement procedure to be used to bar a consumer's access to court. Congress instead intended that such procedures be instituted to encourage warrantors and consumers to first attempt to settle disputes without litigation. Introducing the bill on January 12, 1973,[3] Senator Magnuson stated that one of the bill's two objectives was to provide

---

[3]The legislation that was ultimately signed into law as Magnuson-Moss was first introduced

"meaningful remedies for consumers in the event of a breach of a warranty or service contract obligation." 119 Cong. Rec. 967 (1973) (statements of Senator Magnuson). Senator Moss, the co-sponsor of the bill, elaborated:

"Title I of this bill also provides greater assurance of warranty performance, by doing two important things. First, the bill provides the consumer with an economically, [sic] feasible private right of action so that when a warrantor breaches his warranty or service contract obligations, the consumer can have effective redress. Reasonable attorneys fees and expenses are provided for the successful consumer litigant, and the bill is further refined so as to place a minimum extra burden on the courts by requiring as a prerequisite to suit that the purchaser give the supplier reasonable opportunity to settle the dispute out of court, including the use of a fair and formal dispute settlement mechanism which the bill encourages suppliers to set up ***." 119 Cong. Rec. 972 (1973) (statements of Senator Moss).

These remarks demonstrate that Congress intended for consumers to have a meaningful and cost-effective remedy in the event of a breach of warranty, encouraging warrantors to attempt to settle out of court but also providing reasonable attorney fees and expenses to the successful litigant when the parties are unable to reach an out-of-court settlement.

Here, the trial court ruled on November 15, 2006, that "because the Plaintiff failed to meet the eligibility requirements to submit a claim due to the fact that he did not at the time of the arbitration process own or lease the vehicle which is the subject of this lawsuit *** it is now a legal

---

to the Senate in 1969, but the legislative history referenced in this opinion relates only to Senate Bill 356 (S. 356, 93d Cong. (1973)), the version of the bill that was enacted into law.

impossibility for him to file suit under the Magnuson-Moss Warranty Act."  Permitting ineligibility for a warrantor's informal dispute settlement procedure to bar a consumer's access to court under these circumstances is antithetical to Congress's intent, both because it deprives consumers who no longer possess the vehicle of the right to seek redress pursuant to Magnuson-Moss and, more importantly, because it prevents those consumers from being able to engage in the warrantor's informal dispute settlement program.  Moreover, affirming dismissal on such grounds effectively permits the BBB, an independent entity charged with helping consumers and warrantors resolve disputes without litigation, to rewrite the Act.  This cannot be what Congress intended.

The May 14, 1973, Commerce Committee's report on this bill provides additional clarification as to Congress's intent.

"If a supplier fails to honor his warranty or service contract promises, the consumer can avail himself of certain specified remedies.  If that supplier has provided a bona fide informal dispute settlement mechanism by which disputes between suppliers and consumers are to be resolved, then the consumer would utilize the informal dispute settlement mechanism before pursuing other avenues of redress.  If a supplier does not have an informal dispute settlement mechanism for resolving consumer complaints, or if the consumer is not satisfied with the results obtained in any informal dispute settlement proceeding, the consumer can pursue his legal remedies in a court of competent jurisdiction ***." (Emphasis added.)  S. Rep. No. 93--151, at 2-3 (1973).

Congress clearly provided for a consumer's right to file a civil action where the warrantor did not institute an informal dispute settlement procedure or the consumer is not satisfied with the outcome of that procedure.  The logical extension of this reasoning is that a consumer's access to court should not be barred where the warrantor has established such a procedure, but the consumer is not eligible

to participate in the procedure because an independently operated informal dispute settlement program requires possession of the warranted vehicle as a prerequisite for eligibility. A contrary result would create a subset of consumers who are written out of Magnuson-Moss because they no longer possess the vehicle covered by the warranty.

Possession of the vehicle as a prerequisite to filing suit under Magnuson-Moss is not required by either federal or Illinois law. See Bartow v. Ford Motor Co., 342 Ill. App. 3d 480, 490 (2003) ("resale by the buyer does not preclude recovery for breach of warranty"); Lara v. Hyundai Motor America, 331 Ill. App. 3d 53, 61 (2002) (a consumer's inability to return the vehicle does not bar a Magnuson-Moss claim for breach of an express limited warranty); Spoo v. Boothe, 453 F.2d 405, 405 (9th Cir. 1971) ("the appellant's right to maintain his action for breach of warranty in the sale of personalty is unaffected by the vendee's resale of the property prior to the institution of suit").

This interpretation of Magnuson-Moss is further supported by the House report, which provides that "[a]n adverse decision in any informal dispute settlement proceeding would not be a bar to a civil action on the warranty involved in the proceeding." H.R. Rep. No. 93--1107 (1974) (Conf. Rep.), as reprinted in 1974 U.S.C.C.A.N. 7702, 7723. A consumer who is not satisfied with the outcome of the warrantor's informal dispute settlement procedure therefore has the right to reject that decision and file a civil suit. 16 C.F.R. §703.5(g)(1) (2002). It is illogical to conclude that Congress intended the consumer's right to file suit to be foreclosed where a consumer is ineligible for a warrantor's informal dispute resolution procedure because the program requires the consumer to possess the warranted vehicle, when that is not a prerequisite to bringing a claim pursuant to Magnuson-Moss.

The House report also notes that "[i]f a decision is not reached within the prescribed time limits the consumer could begin a civil action on the warranty involved." H.R. Rep. No. 93--1107

(1974) (Conf. Rep.), as reprinted in 1974 U.S.C.C.A.N. at 7723. The requirement to "initially resort" is thus satisfied where the warrantor's informal dispute settlement procedure fails to render a timely decision (16 C.F.R. §703.5(i) (2002)), and the consumer may then file a civil action. Congress could not have intended to allow a civil action under this circumstance while simultaneously barring it for a consumer who is ineligible for the warrantor's alternative dispute resolution procedure and thus never had the opportunity to engage in out-of-court settlement proceedings. Statutes must be construed to avoid absurd results. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 332-33, 83 L. Ed. 195, 199-200, 59 S. Ct. 191, 199-200 (1938); Jensen v. Bayer AG, 371 Ill. App. 3d 682, 690 (2007). Accordingly, we interpret the legislative history to mandate a result that is not absurd.

For all of these reasons, we hold that Congress did not intend ineligibility for a warrantor's informal dispute settlement procedure to foreclose a consumer's right to file a civil action where the consumer is ineligible because he or she no longer possesses the vehicle covered by a manufacturer's limited warranty. Although we acknowledge defendant's concern that some consumers may attempt to circumvent the "initially resort" requirement through dispossession of the vehicle prior to filing a claim with the warrantor's informal dispute settlement program, that issue is more appropriately addressed to Congress, not this court.

## B. Remaining Arguments

**[The following material is nonpublishable under Supreme Court Rule 23.]**

**[The preceding  material is nonpublishable under Supreme Court Rule 23.]**

We do not reach plaintiff's remaining arguments, because we reverse the November 15, 2006, order on the basis that it is contrary to the legislative intent behind Magnuson-Moss. As a

consequence of this reversal, the trial court's March 8, 2007, order denying plaintiff's motion to reconsider is also reversed.

To summarize, we hold that the legislative history of the Magnuson-Moss Act provides that Congress did not intend a consumer's right to file a civil action pursuant to Magnuson-Moss to be foreclosed where the consumer is ineligible to file a claim with the warrantor's informal dispute settlement mechanism because the consumer no longer possesses the vehicle covered by the manufacturer's limited warranty. We therefore reverse the trial court's November 15, 2006, order finding it to be "a legal impossibility for [plaintiff] to file suit under the Magnuson-Moss Warranty Act," and we remand for further proceedings. In doing so, we are removing the roadblock the trial court erected against plaintiff's Magnuson-Moss claims. However, we express no opinion as to whether plaintiff's actions constitute compliance with the Magnuson-Moss "initially resort" requirement. That is a question of fact, which must be resolved by the trial court.

### CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Kane County is reversed and the cause is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

HUTCHINSON and GROMETER, JJ., concur.